21 Kan. App. 2d 702 (1995)
In the Interest of R.C., D.C., M.C., S.C., and C.C., All Minor Children.
73,262
Court of Appeals of Kansas.
Opinion filed December 8, 1995.
Dan H. Myers, of Myers, Pottroff & Ball, of Manhattan, for appellant.
William E. Kennedy III, county attorney, for appellee.
Stephen W. Freed, of Manhattan, guardian at litem.
Before PIERRON, P.J., RULON, J., and HERBERT W. WALTON, District Judge Retired, assigned.
*703 WALTON, J.:
Carlyle, the natural father of R.C., D.C., M.C., S.C., and C.C., appeals the district court's denial of his motion to obtain custody of his children. He argues that the trial court erred by giving precedent consideration to the best interests of the child rule over the parental preference doctrine in a child in need of care action. We affirm.
Carlyle was married to Viola, the natural mother of R.C., D.C., M.C., S.C., and C.C., on June 15, 1978. They separated in June 1989, and Viola commenced divorce proceedings shortly thereafter. The children remained in her custody after the separation until the intervention of the court in February 1990. Carlyle is currently married to Linda, who has custody of her two developmentally disabled minor children. Viola is now married to Linda's former husband.
On April 4, 1990, the court found R.C. to be a child in need of care by concluding she was without the care necessary for her physical, mental, or emotional health and was physically, mentally, or emotionally abused or neglected, or sexually abused. Specifically, a man living with Viola allegedly sexually abused R.C. On February 13, 1990, prior to R.C. being adjudicated a child of need of care, the court placed R.C. in the temporary care and custody of her paternal grandparents. On August 8, 1990, the court services officer filed a family reintegration plan concerning R.C.
On September 17, 1990, the court adjudicated D.C., M.C., S.C., and C.C. to be children in need of care by concluding they were without adequate parental care, control, or subsistence and the condition was not due solely to the lack of financial means of the children's parents. Carlyle and Viola stipulated to the fact that their children were in need of care. The paternal grandparents were given temporary custody of the children.
At a dispositional hearing on October 24, 1990, the court ordered D.C., M.C., S.C., and C.C. to remain in the custody of the paternal grandparents. All parties stipulated that it was in the best interests of the children to remain with the grandparents. The court also consolidated all cases regarding the five minor children and ordered a court services officer to develop a reintegration plan and submit it to the court within 60 days.
*704 On March 8, 1991, the court services officer filed a family reintegration plan concerning all five children. The requirements of the August 1990 and March 1991 plans were virtually identical: The parents were to (1) attend parenting classes; (2) participate in counseling and be involved with the children's counseling as required; (3) be employed and provide financially for the children; and (4) provide a clean, safe home environment for the children.
On May 8, 1992, the court held a review hearing. The court found that the evidence presented did not show that either Viola or Carlyle were capable of taking care of all the children in their respective homes.
On November 3, 1992, Viola filed a motion seeking overnight visitation of four of the children. The court granted overnight visitation to her every other Friday night. However, the paternal grandmother refused to abide by the court's order based on allegations in a child in need of care proceeding involving the son of Viola's live-in boyfriend that Viola assisted in the abuse of the boy. On May 26, 1993, the court allowed supervised visitation, but restricted unsupervised visitation by prohibiting Viola's live-in boyfriend from being around the children until his child in need of care case was resolved.
On December 15, 1993, Carlyle filed a motion seeking placement of all five minor children in his custody. The highlights of his motion are paraphrased as follows: (1) He had never voluntarily given custody to his parents, nor had he been found to be unfit; (2) the ultimate goal was to reintegrate the children into the family; (3) Viola had continually shown an indifference to the best interests of the children; (4) he had maintained regular visitation every other weekend since April 1990 and had in fact increased mid-week visitation; (5) he and Linda had completed the required 5-week parenting classes, a 12-week program on anger management, and a 5-week love and logic program; and (6) he was gainfully employed and had a residence to adequately provide for the children.
At the March 8, 1994, hearing on Carlyle's motion, the court considered the matters before the court to be the father's motion for residential custody and the mother's request for a modification of visitation. The court heard considerable evidence from Carlyle, *705 the paternal grandmother, numerous social workers, and the children's teachers as to the progress and the best interests of the children. The court continued the matter in order to review a home study and certain evaluations presented to the court.
On March 17, 1994, the parties reconvened for the court's ruling. Prior to reconvening, Carlyle presented the court with the then recent ruling of In re Guardianship of Williams, 254 Kan. 814, 869 P.2d 661 (1994), where the Kansas Supreme Court ruled that the best interests of the child had no application in determining whether a parent, not found to be unfit, is entitled to custody as against a third-party nonparent. In its journal entry, the district court made the following ruling:
"1) The Court finds that notwithstanding the motion that brought this case to hearing, this hearing has actually in substance been a hearing pursuant to K.S.A. 38-1565b, and has also been a review of the reintegration plan;
"2) The Court finds that throughout this case there have actually been findings of unfitness of the parents;
"3) The Court finds it appropriate to consider the best interest of the children herein."
The district court subsequently discussed evidence supporting the best interests of the children and stated that the goals of the original reintegration were no longer viable and that long-term foster care was to remain with the grandparents.
Carlyle argues that Williams clearly provides that the parental preference doctrine is to be utilized in a custody dispute over minor children when the dispute is between a natural parent who has not been found unfit and a nonparent. He contends the trial court basically concluded that when a child is found to be in need of care, such a finding is sufficient to determine that he is an unfit parent. Carlyle states that the court made no mention of the criteria in K.S.A. 38-1585 to establish a presumption of unfitness. Further, Carlyle also argues that the court's placement of the children in the long-term foster care of their grandparents effectively terminated his parental rights without the appropriate proceedings.
The guardian ad litem and the State argue that when the court is presented with a child in need of care case, the best interests of *706 the child are paramount to any other consideration. The guardian ad litem contends that Williams is limited to situations where the issue of custody is between a natural parent and a nonparent in a divorce or domestic relations setting, but is distinguishable in child in need of care cases. In any event, the guardian ad litem submits that even if the court finds Williams controlling, the present case demonstrates the highly unusual or extraordinary circumstances set forth in Williams sufficient to disregard the parental preference doctrine.
The district court's application of the best interests of the child rule in this situation as being superior to the parental preference doctrine is a conclusion of law. "This court has unlimited review of conclusions of law." Hillman v. Colonial Penn Ins. Co., 19 Kan. App.2d 375, 376, 869 P.2d 248, rev. denied 255 Kan. 1001 (1994).
The parental preference doctrine was succinctly stated in Christlieb v. Christlieb, 179 Kan. 408, 409, 295 P.2d 658 (1956), as follows:
"[A] parent who is able to care for his children and desires to do so, and who has not been found to be an unfit person to have their custody in an action or proceeding where that question is an issue, is entitled to the custody of his children as against grandparents or others who have no permanent or legal right to their custody, even though at the time the natural parent seeks their custody such grandparents or others are giving the children proper and suitable care and have acquired an attachment for them."
The court in In re Cooper, 230 Kan. 57, 62, 631 P.2d 632 (1981), summarized the balancing of the parental preference doctrine against the best interests of the child as follows:
"This court has long recognized the State's interest in protecting its children and assuring they receive proper care. State ex rel. O'Sullivan v. Heart Ministries, Inc., 227 Kan. at 253; Murphy v. Murphy, 196 Kan. 118, 122, 410 P.2d 252 (1966). In the State's exercise of its parens patriae powers, the child's best interests are always the paramount consideration. In re Nelson, 216 Kan. 271, 276, 531 P.2d 48 (1975); In re Wheeler, 3 Kan. App.2d 701, 703, 601 P.2d 15, rev. denied 227 Kan. 927 (1979). The parents' rights cannot be disregarded, however, and the child's best interests may be considered in conjunction with the parents' rights. In re Armentrout, 207 Kan. 366, 370, 485 P.2d 183 (1971); Lennon v. State, 193 Kan. 685, 691, 396 P.2d 290 (1964). The parents' rights are subordinate to the State's parens patriae powers and must yield when adverse to the best interests of the child. State v. Garber, 197 Kan. 567, 572, 419 P.2d 896 (1966); Lennon v. *707 State, 193 Kan. at 691. It is presumed that the best interests of the child are served by the retention of the child's custody in the natural parents. In re Armentrout, 207 Kan. 366."
Carlyle contends the parental preference doctrine as articulated in Williams, 254 Kan. 814, controls this case. In Williams, a mother voluntarily entered into a guardianship for her son with a close friend in early 1992. The guardianship was established by agreement of the parties and filed with the court in mid-1992. Approximately half a year later, the mother filed a petition to terminate the guardianship and to have the baby returned to her care. There were no allegations or contentions that the mother was not a fit parent. The principal thrust of the guardian's argument was that it was in the best interests of the child for the guardianship to continue. The mother adamantly contended the parental preference doctrine should govern and her son should be returned to her because she was the natural mother. 254 Kan. at 815-17.
The trial court sided with the guardian and found that in reliance on In re Marriage of Criqui, 14 Kan. App.2d 672, 798 P.2d 69 (1990), the mother must not only show that she is a fit parent, but also that the change of custody materially promotes the child's best interest and welfare. 254 Kan. at 817. However, the Kansas Supreme Court reversed the trial court, affirmed the parental preference doctrine, and overruled Criqui. 254 Kan. at 828. The court held:
"We adhere to the rule that absent highly unusual or extraordinary circumstances the parental preference doctrine is to be applied in a custody dispute over minor children when the dispute is between a natural parent who has not been found unfit and a nonparent. Likewise, we adhere to the rule that the best interests of the child is the appropriate standard to be applied in custody disputes between parents." 254 Kan. at 828.
On the other hand, the guardian ad litem and the State both cite this court's recent decision in In re Baby Boy N., 19 Kan. App.2d 574, 874 P.2d 680, rev. denied 255 Kan. 1001, cert. denied 115 S.Ct. 581 (1994), concerning an adoption over the objections of the natural father. The court considered the interplay of K.S.A. 1993 Supp. 59-2136(h)(4) and (5) (allowing termination of the father's parental rights for failing to support the natural mother during the *708 6 months prior to the child's birth and/or abandoning the mother after having knowledge of the pregnancy) and the parental preference doctrine. The father argued the trial court did not find he was an unfit parent and still terminated his parental rights. 19 Kan. App.2d at 578-79. This court stated:
"The [In re Guardianship of] Williams [, 254 Kan. 814] and Sheppard [v. Sheppard, 230 Kan. 146] decisions rather emphatically state that a parent must be proven unfit before being deprived of custody in a dispute with a nonparent. Do Williams and Sheppard control this decision? Must the parental preference doctrine be employed in every instance involving disputes between natural parents and third parities? The answer to these questions is a qualified `No.' The parental preference doctrine is generally employed in cases where the issue is one of custody between a parent and a nonparent in a divorce or domestic relations setting. The courts have applied other rules in adoption proceedings where the issue is whether the consent of a natural parent is required." 19 Kan. App.2d at 581.
This court in In re Baby Boy N. expressly limited the parental preference doctrine as enunciated in Williams. This court stated:
"We would limit Sheppard and Williams to those cases where a statutory scheme such as 59-2136(h) does not apply. As construed by the courts, statutes such as 59-2136(h) incorporate the parental preference doctrine by their protection of due process rights and the `clear and convincing' burden of proof required to terminate the rights of natural parents. In cases such as this, the rights of a natural parent are properly protected, and the `parental preference' doctrine is preempted." 19 Kan. App.2d at 585.
Additionally, Williams is factually distinguishable. The court almost exclusively discusses cases where the parties entered into a voluntary agreement to place custody of a minor child or children with a nonparent. Pursuant to Williams, the parental preference doctrine should remain a corner stone in such situations. However, that situation is not presently before the court. Where the minor children are involuntarily taken from the home and adjudicated to be children in need of care, the parental preference doctrine is easily pushed aside to make way for the best interests of the children. In the case at bar, all the minor children have been adjudicated to be children in need of care, and the court is in the midst of reintegrating the children with the parents. Once the children were deemed in need of care, their best interests became the dominant concern. K.S.A. 38-1501 et seq. With regard to Williams, *709 there appear to be two avenues for the court to travel. First, the fact that Carlyle's children have been adjudicated children in need of care presumes his current unfitness for custody of the children. Such a finding would not necessarily rise to the level of unfitness necessary to terminate parental rights under K.S.A. 1994 Supp. 38-1583.
It should be noted that, contrary to Carlyle's argument, the district court has not effectively terminated his parental rights by ordering long-term foster care with the grandparents. In order to terminate his parental rights, the district court is required to make the appropriate findings under K.S.A. 1994 Supp. 38-1583. Also, Carlyle argues that the children were not in his custody when they were found to be children in need of care. However, Carlyle has been present and represented at all proceedings, he has stipulated to the fact that all the children are in need of care, and, last, the court found at the May 8, 1992, review hearing that neither parent was capable of taking all of the children in their respective homes.
The trial court in the present case sidesteps Williams by ruling that Williams and the parental preference doctrine do not specifically apply to cases under the Kansas Code for Care of Children. K.S.A. 38-1501 et seq. The court stated in its journal entry that even though Carlyle filed a motion seeking custody of the children, the hearing was in substance a hearing for review of the reintegration plan. Further, the court stated that although the Kansas Code for Care of Children indicates a declaration of the preference for parental custody, it clearly sets forth the real test as the best interests of the minor children.
Regarding Carlyle's unfitness, the district court discussed different levels of unfitness before reaching its conclusion that "throughout this case there have actually been findings of unfitness of the parents." The district court described a lower showing of unfitness necessary to prohibit a change in custody or revoke custody, in cases such as Williams, and the higher showing of unfitness necessary to terminate parental rights. The court then distinguished Williams as a custody case where the best interests of the child is not the standard because "they involved cases of where there hadn't been any adjudication as to whether or not a parent *710 was unfit to have the custody of that child." The district court's different levels of parental unfitness can be illustrated by K.S.A. 1994 Supp. 38-1583(a). In a termination of parental rights proceeding, a court must find, by clear and convincing evidence, that a parent is unfit "by reason of conduct or condition which renders the parent unable to care properly for a child and the conduct or condition is unlikely to change in the foreseeable future." K.S.A. 1994 Supp. 38-1583(a). Perhaps a court's finding that a child is in need of care under K.S.A. 1994 Supp. 38-1502(a)(1), (2), and (3), as occurred in the present case, presumes that the parent is unfit by a finding that the parent is presently "unable to care properly for a child." K.S.A. 1994 Supp. 38-1583(a). Such an argument is supported by the definition of "unfit" and the provisions under which the Carlyle children were found to be children in need of care.
First, a finding that a child is in need of care also encompasses many of the attributes of parental unfitness. The Supreme Court has established a working definition of "unfit" as follows:
"`While the standard of fitness required of parents is difficult to specify without being somewhat ambiguous, conduct which makes a parent unfit may be defined within limits. There is no statutory definition of the word "unfit." It therefore must be given its ordinary significance, having due regard to the context. In general, the word means unsuitable, incompetent, or not adapted for a particular use or service. As applied to the relation of rational parents to their child, the word usually although not necessarily imports something of moral delinquency. Parents who treat the child with cruelty or inhumanity, or keep the child in vicious or disreputable surroundings, are said to be unfit. Parents who abandon the child, or neglect or refuse, when able so to do, to provide proper or necessary support and education required by law, or other care necessary for the child's well being are said to be unfit. Violence of temper or inability or indisposition to control unparental traits of character or conduct, might constitute unfitness. So, also, incapacity to appreciate and perform the obligations resting upon parents might render them unfit, apart from other moral defects.'" Sheppard v. Sheppard, 230 Kan. 146, 153, 630 P.2d 1121 (1981), (quoting In re Vallimont, 182 Kan. 334, 340, 321 P.2d 190 [1958]), cert. denied 455 U.S. 919 (1982).
Second, in many instances it is inherent in a decision finding a child to be a child in need of care that the parent is unable to care for the child. The Kansas Code for Care of Children provides 12 situations where a person less than 18 years of age can be found *711 to be a "child in need of care." K.S.A. 1994 Supp. 38-1502(a). The first three situations are directly relevant to the present case and inherently present the parent as unable to care for the children.
"`Child in need of care' means a person less than 18 years of age who:
"(1) Is without adequate parental care, control or subsistence and the condition is not due solely to the lack of financial means of the child's parents or other custodian;
"(2) is without the care or control necessary for the child's physical, mental or emotional health;
"(3) has been physically, mentally or emotionally abused or neglected or sexually abused." K.S.A. 1994 Supp. 38-1502(a).
The second road this court could travel is to find Williams controlling, but hold that the present case is one of extraordinary circumstances. In Williams, the court held the parental preference doctrine governs "absent highly unusual or extraordinary circumstances." 254 Kan. at 828. Arguably, when the children have been adjudicated children in need of care, this is certainly an extraordinary circumstance where the best interests of the children are paramount.
Additionally, the extraordinary circumstances are present since the State's interest in protecting the child is even stronger when the child is found to be in need of care. "We agree that parental rights are fundamental in nature and are constitutionally protected. [Citation omitted.] The welfare of children is also a matter of state concern." In re Adoption of McMullen, 236 Kan. 348, 352, 691 P.2d 17 (1984). "Clearly, the welfare of children is a matter of public policy of great state concern and we have so held numerous times." Werner v. Kliewer, 238 Kan. 289, 296, 710 P.2d 1250 (1985).
The guardian ad litem presents factual evidence that this case is an extraordinary case. First, Carlyle has exhibited violent behavior even though he has completed anger management therapy. Second, if Carlyle is given custody of his five minor children, he will have a household of seven children. The guardian ad litem argues it would be stressful for any parent to provide the necessary care for seven children. Carlyle's situation is exacerbated since his wife suffers from mild and chronic psychosocial difficulties and two of *712 her children are developmentally disabled. Last, the guardian ad litem also presents evidence relating to the present conditions of the children and how their lives would change by giving custody to the father.
A case that addresses the parental preference doctrine in the context of a child in need of care proceeding is In re Shelton, 8 Kan. App.2d 226, 654 P.2d 487 (1982). Although Shelton was decided prior to the legislature's implementation of the Kansas Code for Care of Children in 1982, the court considered a child who was found to be a deprived child as defined in K.S.A. 1979 Supp. 38-802(g). This statute, which is similar to K.S.A. 1994 Supp. 38-1502(a), stated:
"(g) `Deprived child' means a child less than eighteen (18) years of age:
"(1) Who is without proper parental care or control, subsistence, education as required by law or other care or control necessary for such child's physical, mental or emotional health, and the deprivation is not due solely to the lack of financial means of such child's parents, guardian or other custodian;
"(2) who has been placed for care or adoption in violation of law;
"(3) who has been abandoned or physically, mentally, emotionally abused or neglected or sexually abused by his or her parent, guardian or other custodian; or
"(4) who is without a parent, guardian or legal custodian."
In Shelton, a 2-year-old child was seriously burned in a fire at his home where he lived with his mother. As a result, the district attorney filed a petition alleging the child to be a deprived child under K.S.A. 1979 Supp. 38-802(g)(1), and the court ordered the child to remain in the custody of SRS during hospitalization. After the mother stipulated that the child was a deprived child, the court ordered legal custody to remain with SRS. For 2 years, the child was at various times in the mother's physical custody, in foster care, and in in-patient psychiatric care. The child was subsequently in the custody of a foster family for more than 6 months. SRS informed the foster family that the child would be returned to his mother. The foster family filed a motion to intervene and requested a hearing to determine the best interests of the child. 8 Kan. App.2d at 227.
After resolving that the foster parents had standing, this court addressed the mother's argument for applying the parental preference doctrine:

*713 "Appellees suggest that this preference for keeping children with their natural parents should be a factor in determining the issue before us. Granted the ultimate preference, and the desirability of reunification of parent and child, final action is further down the road. The parental preference is not paramount to the State's principal concern  the best interests and welfare of the child. [Citation omitted.]" 8 Kan. App.2d at 229.
Thus, in what would be the equivalent of child in need of care proceedings today, the court in Shelton held that the best interests of the children are superior to the parental preference doctrine. 8 Kan. App.2d at 229.
For the reasons stated, we find the holding in Shelton to be persuasive. We hold that the best interests of the child doctrine controls cases where the children have been adjudicated to be children in need of care. Williams does not apply to this case since a successful child in need of care proceeding presumes parental unfitness for present custody of the children.
Carlyle does not argue or appeal the district court's finding that the children were children in need of care. Furthermore, he does not argue there was not substantial evidence to support the court's ruling. In any event, our standard of review is "whether the court below had substantial competent evidence upon which to base its ruling." In re Hamlett, 2 Kan. App.2d 642, 644, 586 P.2d 277 (1978). There was ample evidence presented at the hearing on March 8, 1994, to support the trial court's ruling.
Affirmed.