29 Kan. App.2d 1023 (2001)
36 P.3d 300
IN THE INTEREST OF R.B.S.
No. 87,150.
Court of Appeals of Kansas.
Opinion filed November 30, 2001.
*1024 Robert D. Campbell, of Campbell Law Office, P.A., of Atchison, for appellant.
John R. Kurth, assistant county attorney, and Gerald R. Kuckelman, county attorney, for appellee.
Before GERNON, P.J., KNUDSON and BEIER, JJ.
BEIER, J.:
This appeal from a child in need of care (CINC) adjudication requires us to review the propriety of a newborn's removal from the care of his parents before they took him home from the hospital. His parents challenge the district court's explicit reliance on the previous death of the newborn's older brother at the age of 5 months.
R.B.S. was born on January 31, 2001, at Cushing Memorial Hospital in Leavenworth. His parents, P.S. and L.S., had not made prior arrangements to deliver R.B.S. at Cushing, and L.S. had received no prenatal care. The couple lives in Atchison, but they chose to take a cab from there to Leavenworth after L.S.'s water broke.
Cushing follows a policy of keeping newborns in the hospital for at least 24 hours after their birth to be assured the babies are healthy. P.S. and L.S. attempted to remove R.B.S. from the hospital nursery before 24 hours had elapsed, and P.S. threatened a security officer when the officer and other hospital personnel intervened: "[A]nybody that tries to stop me," the security officer quoted P.S. as saying, "I will knock their teeth down their throat and bash their head in." L.S. told the security officer that P.S. abused her. After this incident, the hospital initiated a 72-hour protective hold on R.B.S.
Before the hold expired, a CINC petition had been filed. The petition was based on L.S.'s lack of prenatal care, the death of R.B.S.'s older brother, the parents' limited intellectual capacity, and P.S.'s threat at the hospital. The State obtained an ex parte protective custody order and placed R.B.S. in the care of the Department of Social and Rehabilitation Services (SRS) the same day.
At the ensuing CINC hearing, counsel for P.S. and L.S. objected to the introduction of evidence regarding their neglect and the *1025 ultimate death of their older son. The older son had never been the subject of a CINC or termination proceeding. The district judge rejected counsel's K.S.A. 60-455 and due process arguments and permitted the State to introduce the evidence to show the parenting skills of P.S. and L.S. He also noted that the statute setting forth permissible reasons for termination of parental rights included the unexplained injury or death of another child. See K.S.A. 38-1583a(b)(6).
Family practice physician Ryan Thomas, M.D., testified about sepsis caused by streptococcus pneumonia, the reported cause of the older baby's death. He said it was unusual for a 5-month-old to die from that condition, but he did not blame the care or lack of care of P.S. and L.S. for that outcome. Thomas testified the baby probably would not have had difficulty in breathing or other symptoms that were ignored or unappreciated by his parents. More likely, the baby would have had a mild cough.
Ruth Tull also testified at the CINC hearing. She provided child care for the older baby for about 3 months of his life. She testified that several times in cold weather, L.S. brought in the baby clad only in a wet diaper, sitting in a wet car seat, with only one or two thin blankets over him. She also testified the baby was often cold and dirty; occasionally L.S. had no milk for him. Although Tull gave L.S. warm clothes for the baby, Tull never saw the baby wear them.
Officer Tim Robinson testified that he had contact with L.S. approximately a year before R.B.S.'s birth, when L.S. attempted to obtain milk for her older baby from the American Legion. At that time, L.S. said P.S. had left her without any food or money. The baby was wrapped in a T-shirt with his legs exposed to the cold.
Samantha Black, a social worker employed by the hospital, testified that L.S. reported a history of violence between her and P.S. and that the hospital was concerned about sending R.B.S. into a volatile situation.
The district judge found R.B.S. was a child in need of care, explicitly relying at least in part on the death of the parents' older baby:

*1026 "In the absence of the death of the sibling, the Court would candidly say there is not evidence sufficient to find that this is a child in need of care.
"But given the death of a sibling that soon to the birth of this child, the combination of no prenatal care, choosing to, after the water has broke, take a cab from Atchison to Leavenworth where no prior arrangements have been made to give birth to the child, then to try to remove the child from the hospital before the standard 24 hours had lapsed, given the death of a sibling at a relatively young age, is not reasonable to the Court.
....
"That, coupled with the Court's past dealings with both parents, which raise serious issues as to their emotional stability and mental stability to be parents, give the Court no choice but to find this is a child in need of care."
P.S. and L.S. first argue on appeal that the district judge erred by admitting evidence regarding their older baby.
Kansas defines a "child in need of care" as one younger than 18 who, among other things, is "without adequate parental care, control or subsistence and the condition is not due solely to the lack of financial means of the child's parents or other custodian" or "without the care or control necessary for the child's physical, mental or emotional health." K.S.A. 38-1502(a)(1) and (2).
The parents' evidentiary argument involves statutory interpretation, which raises a question of law over which our review is unlimited. In re M.E.B., 29 Kan. App.2d 687, 688, 29 P.3d 471 (2001).
P.S. and L.S. insist K.S.A. 60-455 is controlling. That provision of the civil procedure code limits the admissibility of evidence of a party's prior bad act or crime to specific situations. Because none of those situations was present in this case, P.S. and L.S. argue, the admission of evidence regarding their treatment of their older child or his death was reversible error.
This argument ignores the more specific and thus superseding effect of K.S.A. 38-1583a(b). In re N.D.G., 20 Kan. App.2d 17, 26, 883 P.2d 89, rev. denied 256 Kan. 995 (1994) (specific statute controls over general provision). We agree with the district court that this statute permits, among other things, consideration of a parent's treatment of another child when termination is the issue. K.S.A. 38-1583a(b)(2) and (6) specifically list the following among the reasons parental rights can be severed: "conduct toward a child *1027 of a physically, emotionally or sexually cruel or abusive nature" and/ or "unexplained injury or death of another child or stepchild of the parent." (Emphasis added.)
We also agree with the district court that this statute provides guidance even though this case has not reachedand may never reacha termination hearing. The CINC adjudication to which R.B.S. was subject and any later proceedings for termination of his parents' rights for which the CINC adjudication was a first step would necessarily be interrelated. As our court stated in In re D. V., 17 Kan. App.2d 788, 790-91, 844 P.2d 752, rev. denied 252 Kan. 1092 (1993): "The termination statutes are part of the same statutory scheme as the statutes authorizing proceedings to adjudicate a child in need of care.... The overall concern of the [Kansas] Code for Care of Children is to protect children from ... mistreatment."
In D.V., we ruled that evidence admissible in a CINC hearing was likewise admissible in a termination hearing: "It would defy logic to allow such evidence to be used in proceedings to determine if a child is a child in need of care and disallow such evidence to establish the more serious misconduct and potentially greater danger to the child that supports termination of parental rights." 17 Kan. App.2d at 791.
We hold it would also defy logic to permit evidence of a parent's shortcomings or his or her mistreatment of another child or the injury or death of a sibling to support termination and not to permit it to support a CINC adjudication. To do so would violate the fundamental rule of statutory construction that the purpose and intent of the legislature governs. See Babe Houser Motor Co. v. Tetreault, 270 Kan. 502, 506, 14 P.3d 1149 (2000) ("The fundamental rule of statutory construction, to which all other rules are subordinate, is that the intent of the legislature governs where that intent can be ascertained."). The Kansas Code for Care of Children is to be construed liberally to best serve the welfare of the child under consideration. K.S.A. 38-1501.
The parents' second argument is that insufficient evidence supported the district court's adjudication of R.B.S. as a child in need *1028 of care; thus their fundamental right to custody and control of R.B.S. was violated.
"[A] natural parent's right to the custody of his or her children is a fundamental right protected by the Fourteenth Amendment to the United States Constitution which may not be disturbed by the State or by third persons absent a showing the natural parent is unfit." In re Adoption of A.P., 26 Kan. App.2d 210, 215-16, 982 P.2d 985, rev. denied 268 Kan. 846 (1999). This court reviews a child in need of care adjudication for substantial competent evidence to support the district judge's finding. In re R.C., 21 Kan. App.2d 702, 713, 907 P.2d 901 (1995), rev. denied 259 Kan. 928 (1996).
We agree with P.S. and L.S. that no substantial competent evidence supported the district judge's reliance, even in part, on the death of their older son. The medical testimony could not have been more clear. Thomas did not blame P.S. or L.S. in any way for the older child's death. In fact, he was careful not to do so. Although the death may be called "unexplained" because no one is certain why the bacteria that caused the child's pneumonia migrated into his bloodstream, it was not "unexplained" in a manner that implicated P.S. or L.S. There was absolutely no evidence that any behavior by P.S. or L.S. caused the sepsis, that they could have done anything to prevent it, or that they could have taken steps to save the baby once it occurred. The evidence showed only that the baby may have had a mild cough. A mild cough, even in a 5-monthold, is not usually a sign of an immediately life-threatening condition.
We do not agree with P.S. and L.S. that the evidence other than that having to do with their first child's death was inadequate. Even without consideration of the contents of the "social file" contained in the record on appeal but not admitted into evidence in the district court, the evidence of the parents' violent relationship and the parents' neglect of their older son prior to his death was sufficient to support a CINC adjudication of R.B.S. K.S.A. 38-1583a(b)(2) allows consideration of "conduct toward a child of a physically, emotionally or sexually cruel or abusive nature." (Emphasis added.) The older son qualified as such "a child."
*1029 L.S. told both the hospital security guard and other hospital personnel that P.S. abused her. She told Robinson that P.S. left her and the couple's first baby in the cold without money or food. In addition, the babysitter for R.B.S.'s older brother said L.S. persisted in bringing the older baby in without appropriate clothing, even after the sitter gave L.S. clothing he could have worn. L.S. also delivered the baby to the sitter wet and dirty.
The State was correct that this testimony was directly relevant to and persuasive of P.S.'s and L.S.'s lack of parenting ability. Their conduct toward their older son, including exposing him to the violence between them and their failure to feed or clothe the child properly, is physically and emotionally abusive behavior justifying a CINC adjudication for a younger child. The district judge reached the right resultfinding R.B.S. a child in need of care although he relied in part on a wrong reason. See Calver v. Hinson, 267 Kan. 369, 374, 982 P.2d 970 (1999).
Because R.B.S. has not spent any of his first 8 months of life in the care of P.S. and L.S., one further point bears emphasis at the close of this opinion. The parental rights of P.S. and L.S. will be subject to severance if evidence is mustered to support their unfitness in a termination hearing, even if R.B.S. has still never spent time in their custody and control. In In re Price, 7 Kan. App.2d 477, 644 P.2d 467 (1982), we examined the question of whether a child could be characterized as "deprived," i.e., the equivalent of "a child in need of care" under a predecessor statute, if he had never been in the custody of his parent. In the words of an Ohio case quoted in that opinion: "`The law does not require the court to experiment with the child's welfare to see if he will suffer great detriment or harm.'" Price, 7 Kan. App.2d at 480 (quoting In re East, 32 Ohio Misc. 65, 69, 288 N.E.2d 343 [1972]).
In other words, a child may be adjudicated in need of care because he or she is without proper parental care necessary for the child's physical, mental, or emotional health, even if the parent has never been given a chance to prove himself or herself as to that particular child. Once there is evidence of a parent's unfitness even if it relates to a child other than the one at issuewe need not gamble with the health or life of the child before us. See Price, *1030 7 Kan. App.2d at 480 (quoting In Interest of Kester, 228 N.W.2d 107, 110-11 [Iowa 1975]).
Affirmed.