IN THE SUPREME COURT OF THE STATE OF KANSAS

No. 118,188

In the Matter of the Guardianship and Conservatorship of

B.H., D.D., S.D., and V.D.,
Minor Children.

SYLLABUS BY THE COURT

1.

Under ordinary circumstances, voluntary guardianships and custodianships may be terminated at any time and for any or no reason.

2.

In the absence of unusual or extraordinary circumstances, the parental preference doctrine is to be applied in a custody dispute over minor children when the dispute is between a natural parent who has not been found unfit and a nonparent.

3.

Whether extraordinary circumstances exist is a mixed question of law and fact. The district court makes factual findings about the circumstances, and it makes a legal conclusion about whether these circumstances are extraordinary. Appellate courts review the factual findings to determine whether they are supported by clear and convincing evidence, which is to say, whether the reviewing court is convinced that a rational fact-finder could have found the determination to be highly probable. The question of law would be subject to unlimited review.

1

4.

If the reviewing court finds no error in the lower court's determination that extraordinary circumstances exist, then determinations regarding children's best interests are reviewed for abuse of discretion.

5.

In general, litigants must object to inadequate findings of fact and conclusions of law in order to give the trial court the opportunity to correct them. In the absence of an objection, omissions in findings will not be considered on appeal and the appellate court presumes the district court found all facts necessary to support its judgment.

6.

When it is impossible to discern from the appellate record the factors on which the district court relied in finding extraordinary circumstances, a case may be remanded to the district court for additional factual findings and legal conclusions that suffice for meaningful appellate review.

Review of the judgment of the Court of Appeals in an unpublished opinion filed September 21, 2018. Appeal from Wilson District Court; TOD MICHAEL DAVIS, judge. Opinion filed June 7, 2019. Judgment of the Court of Appeals reversing the district court is reversed. Remanded to the district court with directions.

*John J. Gillett*, of Chanute, argued the cause and was on the brief for appellants.

*Andrea Sue Hughes*, of the Law Dame, LLC, of Paola, argued the cause, and *G. Thomas Harris*, of Harris Law Office, of Fredonia, was on the brief for appellees.

*Charles H. Apt III*, of Apt Law Offices, LLC, of Iola, was on the brief as guardian ad litem.

2

The opinion of the court was delivered by

ROSEN, J.: During the course of child in need of care (CINC) proceedings, Alicia and Sam relinquished custody of the four children in their care to relatives through a legal guardianship, after which the CINC proceedings were either terminated or became dormant. Alicia and Sam later sought to terminate the guardianship. The district court refused to grant them relief, holding that the best interests of the children militated against returning custody to Alicia and Sam. The Court of Appeals disagreed and reversed the district court. This court granted the guardians' petition for review.

Because we determine that the district court findings were insufficient to allow proper appellate review, we remand the case to the district court for more complete and specific findings.

FACTS

The record informs us that Alicia is the natural mother of S.D., V.D., and D.D. Sam is the natural father of S.D., V.D., and B.H. In 2010, Alicia and Sam were arrested on drug-related charges. Because all of the children had been living with Alicia and Sam at the time of the arrest, the children were placed in temporary foster care.

On September 1, 2010, the Wilson County Attorney filed CINC petitions regarding all four children. On the same day, the court entered orders giving temporary physical custody of the children to Sam's cousin, Malinda, and her husband, Gregory. Each child was adjudicated a child in need of care.

On October 14, 2010, Malinda filed a petition for guardianship and conservatorship requesting that the court appoint her and Gregory coguardians and

3

coconservators for all four children. Following a hearing, on December 23, 2010, the district court granted the petition and appointed Malinda and Gregory coguardians and coconservators of B.H., S.D., and V.D. The order also purported to terminate the CINC cases concerning those three children. The court did not rule regarding the guardianship and conservatorship of D.D. It continued her case until March 7, 2011, so that D.D.'s natural father had adequate time to participate in the proceedings. D.D.'s father did not respond and, on March 10, 2011, the district court appointed Malinda and Gregory coguardians and coconservators of D.D. and purported to terminate the CINC case concerning her.

On the same day that it appointed Malinda and Gregory guardians of D.D., the district court ruled on child support. The journal entry indicates the Kansas Department of Social and Rehabilitation Services (SRS) had moved to intervene in the guardianship proceeding. In the journal entry, the court found that the guardians had received $795.39 in monthly cash assistance from SRS for each of the children—D.D., S.D., and V.D. The court ordered Alicia and Sam to reimburse SRS for these payments. It further ordered Alicia and Sam to each pay the guardians $407 per month for the support of the children.

Alicia and Sam were eventually convicted of felony drug charges and sentenced to prison terms. Sam served two and a half years in prison and was released in July 2013. Alicia served four and a half years in prison and was released in December 2014.

Alicia was paroled to the guardians' house in Osawatomie, Kansas, and lived there for a short time with them and the children. After three or four months, Alicia moved to Louisburg before eventually settling in Paola with her boyfriend and his daughter. She saw the children occasionally when she requested to see them and the children were not busy. S.D., V.D., and D.D. stayed overnight at her house once. By 2016, she was approximately $17,000 in arrears in child support.

4

During his incarceration, Sam called the children once every few months. He also sent them letters. After his release, he immediately moved to the state of Washington. He informed Malinda that he could not see the children before his move because he was being paroled to Washington. Sam called Malinda one month after he arrived in Washington and informed her he would come see the children at Christmas. He did not make the visit. Malinda did not hear from Sam until March of 2014 when he called her on the phone. Sam made no attempts to see the children after his release from prison. He began making child support payments in March 2016 after his employer received paperwork indicating he needed to garnish Sam's wages. The payments were sporadic and depended on whether Sam had work. Sam owed about $25,600 in arrearages.

On July 26, 2016, Alicia and Sam filed a petition to terminate the guardianship and conservatorship. They argued that they had a constitutional right to their children and, because they now had the means to care for the children, the guardianship and conservatorship should be terminated and the children should be returned to their custody.

The guardians moved to dismiss the petition. They asserted that Alicia and Sam were presumptively unfit under K.S.A. 2016 Supp. 38-2271. Consequently, they argued, Alicia and Sam could not terminate the guardianship. A hearing was held on the petition to terminate the guardianship.

On March 16, 2017, Alicia and Sam moved the court to open the record and take additional evidence that did not exist before the hearing. The court granted the motion and ordered a hearing. The judge also stated that he would interview the children again. The hearing was held on April 28, 2017, and the court heard testimony about the

guardians' fitness, efforts by Alicia and Sam to spend time with the children, and the children possibly changing their minds about with whom they wanted to reside.

On July 18, 2017, the district court denied the petition to terminate the guardianship. It made a number of legal observations before ruling: that K.S.A. 59-3091(h) required that it terminate the guardianship unless there was clear and convincing evidence that it was still needed; that it was the guardians' burden to show that Alicia and Sam were "still unfit" or that "exceptional circumstances" existed; and that, when the parents are unfit or extraordinary circumstances exist, the best interests of the children should be considered. The court concluded that extraordinary circumstances existed and that terminating the guardianship would be contrary to the best interests of the children. It ruled that, because it found that extraordinary circumstances existed, it would not determine whether Alicia and Sam were fit parents. Based on all of this, the court concluded there was clear and convincing evidence that the guardianship should not be terminated.

Alicia and Sam appealed the decision. The Court of Appeals reversed the district court after concluding that the district court erred when it considered the best interests of the children. *In re Guardianship and Conservatorship of B.H.*, No. 118,188, 2018 WL 4517544, at *6 (Kan. App. 2018) (unpublished opinion). It held that the district court should have applied the parental preference doctrine because it did not make a finding of parental unfitness, it failed to identify the extraordinary circumstances, and the evidence would not support a finding of extraordinary circumstances. 2018 WL 4517544, at *6. Applying the parental preference doctrine, the Court of Appeals reversed the district court order and remanded the case with directions to terminate the guardianship. 2018 WL 4517544, at *6-7.

We granted the guardians' petition for review.

6

ANALYSIS

This appeal focuses on the interplay between the Kansas Code for Care of Children, K.S.A. 2018 Supp. 38-2201 et seq., and the Kansas Probate Code's Act for Obtaining a Guardian or a Conservator, or both, K.S.A. 59-3050 et seq. The appeal must be understood in light of two distinct kinds of proceedings at the district court level: the guardianship action of the present appeal, and CINC proceedings filed as separate actions under different case numbers. No appeals were taken in the CINC proceedings; indeed, it is unclear what orders were entered in the CINC proceedings, although at least one was apparently terminated following the approval of the guardianship by the probate court.

K.S.A. 2018 Supp. 38-2201(a) states: "any orders pursuant to [the Code for Care of Children] shall take precedence over any similar order under . . . article 30 of chapter 59 of the Kansas Statutes Annotated, and amendments thereto, guardians and conservators, . . . until jurisdiction under this code is terminated." K.S.A. 2018 Supp. 38-2203(a) states: "Proceedings concerning any child who may be a child in need of care shall be governed by this code . . . ." In the present case, however, the proceedings under the Code for Care of Children were subordinated to proceedings under the chapter 59 guardianship and conservatorship statutes.

Under the Code for Care of Children, jurisdiction is obtained over a child upon the filing of a petition under the code. K.S.A. 2018 Supp. 38-2203(c). Jurisdiction over the child continues until the child becomes 18 years of age (with exceptions for children still attending high school), or the child is adopted, or the child has been discharged by the court. K.S.A. 2018 Supp. 38-2203(c). Following an adjudication that a child is a child in need of care, a court is to consider various factors relating to the welfare of the child and then make dispositional decisions. K.S.A. 2018 Supp. 38-2255. If the court awards

7

custody of the child to a party outside the home, a permanency plan must be prepared, which will include considerations for future reintegration into the home. K.S.A. 2018 Supp. 38-2255(e); K.S.A. 2018 Supp. 38-2264.

If the court deems reintegration a viable alternative, a reintegration plan should be developed as part of a court-approved permanency plan. The permanency plan is subject to at least annual court review. If the court deems reintegration not a viable alternative, the State must file a motion within 30 days seeking termination of parental rights or the appointment of a permanent custodian. K.S.A. 2018 Supp. 38-2255(f). Courts are authorized to appoint permanent custodians, a legal relationship created strictly for the resolution of CINC cases when termination of parental rights is not in the best interests of the child but placement of the child in the parental home is also not in the child's best interests. See K.S.A. 2018 Supp. 38-2272. Such a permanent custodianship may be created with the consent and agreement of the parents and the approval of the court. K.S.A. 2018 Supp. 38-2272(a)(1). The district court retains jurisdiction over the child unless the court enters an order terminating jurisdiction. K.S.A. 2018 Supp. 38-2272(b). If a permanent custodian is appointed, the parents retain strictly limited rights and responsibilities:  the obligation to pay child support and medical support; the right to inherit from the child; and the right to consent to adoption of the child. K.S.A. 2018 Supp. 38-2272(h).

In the present case, it appears that the Code for Care of Children procedures were followed at least as far as having the children declared children in need of care. From testimony in the record, we can speculate that some kind of hearings were held regarding permanency. It appears, however, that no permanency plans were created and no plans for reintegration were either adopted or found unfeasible. No permanent custodians were appointed and Alicia and Sam's rights were not terminated. Instead, the statutory process for determining custody was short-circuited by the initiation of guardianship proceedings.

8

This process violated the mandates of the Code for Care of Children, which "creates a legislatively designated framework of sequential steps of judicial proceedings with each step occurring in a specific order leading toward permanency in the child's placement." *In re N.A.C.*, 299 Kan. 1100, Syl. ¶ 5, 329 P.3d 458 (2014).

K.S.A. 59-3091 sets out the manner for terminating a guardianship or conservatorship. K.S.A. 59-3091(a) provides:

"At any time following the appointment of a guardian or a conservator, any person, including the ward or conservatee, may file a verified petition with the court requesting that the court find that the ward or conservatee is no longer in need of a guardian or a conservator, or both, and requesting that the court terminate the guardianship or conservatorship, or both."

Following a hearing, "if the court does not find, by clear and convincing evidence, that the ward or conservatee is in need of a guardian or conservator, or both, the court shall order that the guardianship or conservatorship, or both, be terminated as provided for herein." K.S.A. 59-3091(h).

Ordinarily, voluntary guardianships are exactly that:  voluntary. For that reason, they may be terminated at any time and for any or no reason. See Nelson, *Child Custody, Parenting Time, and Third-Party Visitation*, Practitioner's Guide to Kansas Family Law § 6.8.2(a) 2d ed. 2010. But several circumstances inform us that the present case does not involve an ordinary voluntary guardianship. Alicia and Sam were facing involuntary separation from their children because they were going to prison. They were also facing the prospect of losing their parental rights, and they opted for the guardianship as a means to avoid CINC final orders. The CINC cases entered a state of limbo:  the record on appeal contains no judicial determination that the status of the parental fitness ever

9

changed or that the children were no longer children in need of care, although the CINC cases may have been terminated.

In *In re Guardianship of Williams*, 254 Kan. 814, 869 P.2d 661 (1994), this court set out several principles relevant to the present case.

> "The best interests of the child test . . . has long been the preferred standard to apply when the custody of minor children is at issue between the natural parents of the child or children. However, absent highly unusual or extraordinary circumstances it has no application in determining whether a parent, not found to be unfit, is entitled to custody as against a third-party nonparent." 254 Kan. at 826.

In support of this rule, the *Williams* court quoted *Herbst v. Herbst*, 211 Kan. 163, 163, 505 P.2d 294 (1973): "'In the absence of an adjudication that a natural parent is unfit to have custody of a child, the parent has the paramount right to custody as opposed to third parties—even, as here, they happen to be her own parents and the child's grandparents.'" 254 Kan. at 826. The court also referred to *In re Eden*, 216 Kan. 784, 786-87, 533 P.2d 1222 (1975), which rejected the best interests test in disputes between strangers and natural parents who are not unfit and who are able and willing to care for the children.

The court cited with approval 67A C.J.S., Parent and Child § 26, p. 253, which states that, when there is no intent permanently to relinquish custody, but a parent surrenders a child temporarily because of illness or financial difficulties, the parent has the right to reclaim custody when the situation changes for the better. 254 Kan. at 827. It also cited Elrod, Child Custody Prac. and Proc. § 4.06 (1993), noting a general rule that parents as natural guardians have superior rights to the custody of their child over nonparents "'unless the parents are unfit or extraordinary circumstances exist.'" 254 Kan. at 827-28.

This court concluded:  "We adhere to the rule that *absent highly unusual or extraordinary circumstances* the parental preference doctrine is to be applied in a custody dispute over minor children when the dispute is between a natural parent who has not been found unfit and a nonparent." (Emphasis added.) 254 Kan. at 828. This rule applies even if "at the time the natural parent seeks their custody [the guardians] are giving the children proper and suitable care and have acquired an attachment for them." 254 Kan. 814, Syl. ¶ 2.

As to what constitutes "extraordinary circumstances," the *Williams* court quoted *In re Kailer*, 123 Kan. 229, 231, 255 P. 41 (1927):

> "'[T]he welfare of children is always a matter of paramount concern, but the policy of the state proceeds on the theory that their welfare can best be attained by leaving them in the custody of their parents and seeing to it that the parents' right thereto is not infringed upon or denied. This is the law of the land on this subject. And it never becomes a *judicial* question as to what is for the welfare and best interests of children until the exceptional case arises where the parents are dead, or where they are unfit to be intrusted with the custody and rearing of their children and have forfeited this right because of breach of parental duty, or where the right has been prejudiced by the discord of the parents themselves.'" 254 Kan. at 822.

*Kailer* predated the Code for Care of Children, and we do not consider its list of factors to be exhaustive. *Williams* simply places the responsibility on a district court to decide whether particular circumstances are extraordinary.

Alicia and Sam argue that these principles from *Williams* mandate termination of the guardian and custodial relationship. But these principles apply to *ordinary* circumstances for creating guardianships. See *In re R.C.*, 21 Kan. App. 2d 702, 708, 713,

11

907 P.2d 901 (1995), *rev. denied* 259 Kan. 928 (1996) (distinguishing *Williams*, which dealt with truly voluntary guardianships, from cases arising out of the Code for Care of Children, and holding that CINC-motivated guardianships require consideration of best interests of children). It is possible that various factors, whether procedural peculiarities, family relationships, or other issues that may arise in the exceptional case, may justify a finding of extraordinary circumstances. *Williams* simply informs us that the best interests of the children—standing alone—do not take precedence over the preference of parents to retain or regain custody of their children.

The district court stated that, "having found extraordinary circumstances exist, this Court does not determine whether or not Sam and Alicia are fit parents . . . ." The Court of Appeals made much of this non-determination. See 2018 WL 4517544, at *4-5. The Court of Appeals gave little weight to the parties' conflicting evidence about parental fitness, because the district court order was based on the existence of extraordinary circumstances, not on a finding of parental unfitness.

The proper venue for determining parental fitness would have been, of course, the proceedings under the Code for Care of Children. As noted earlier, orders pursuant to the Code take precedence over similar orders under the Probate Code relating to guardians and conservators. K.S.A. 2018 Supp. 38-2201(a). If the statutory requirements under the Code for Care of Children had been followed, Alicia and Sam could have sought to persuade the court in the CINC proceedings that they were fit and that the children should be reintegrated into their homes.

For reasons that do not appear in the record, that did not happen in the present case. Instead, a guardianship proceeding appears to have taken the place of the required CINC proceedings. As a consequence, parental fitness was left undetermined, as was any plan for reintegration.

12

The district court explicitly found that "extraordinary circumstances exist in this case." The court also listed facts that contributed to a conclusion that the best interests of the children would be served by maintaining the guardianship and custodianship. The court noted the earlier determinations that the children were in need of care; the earlier CINC proceedings finding that remaining in the home or returning home would be contrary to the welfare of the children; the special educational and socializing needs of the children that had not been met by Alicia and Sam but were being met by the guardians; the children residing in the custody of the guardians for more than six years; and separating the children would be harmful to them.

It is not clear, however, which of these many factors were the basis for the district court's legal conclusion that extraordinary circumstances existed. It is further unclear whether the district court's determination that extraordinary circumstances are present here was intended to be an independent finding of fact, a stand-alone legal conclusion finding allowing the court to consider the children's best interests, or a conclusion based on the series of factual findings that preceded it. It may be that at least some of the factors relating to best interests were also considered grounds for finding extraordinary circumstances, but the order does not state that is the case. It is also possible that the district court considered the overall circumstances, including the truncated CINC proceedings, to be extraordinary, without considering any particular factor sufficient to lead to that conclusion.

Whether extraordinary circumstances exist is a mixed question of law and fact. The district court makes factual findings about the circumstances, and it makes a legal conclusion about whether these circumstances are extraordinary. See, e.g., *Gannon v. State*, 303 Kan. 682, 699-700, 368 P.3d 1024 (2016). The appellate court reviews the factual findings to determine whether they are supported by clear and convincing

evidence, which is to say, whether the reviewing court is convinced that a rational fact-finder could have found the determination to be highly probable. See K.S.A. 59-3091(h) (clear and convincing evidence necessary to support rejecting request to terminate custodial relationship); *In re Adoption of B.B.M.*, 290 Kan. 236, 244, 224 P.3d 1168 (2010). The question of law would be subject to unlimited review. See, e.g., *State v. Kahler*, 307 Kan. 374, 400, 410 P.3d 105 (2018), *cert. granted* 139 S. Ct. 1318 (2019). If the reviewing court finds no error in the lower court's determination that extraordinary circumstances exist, then determinations regarding children's best interests are reviewed for abuse of discretion. See *In re R.S.*, 50 Kan. App. 2d at 1116.

Unfortunately, in the present case, this paradigm for review cannot be followed. While the district court made findings of fact and reached conclusions of law, it is impossible to disentangle the findings from the conclusions and to sort out which findings supported which conclusions.

In general, litigants must object to inadequate findings of fact and conclusions of law in order to give the trial court the opportunity to correct them. In the absence of an objection, omissions in findings will not be considered on appeal. When no objection is made, this court presumes the district court found all facts necessary to support its judgment, although this court may nevertheless order a remand if the lack of specific findings precludes meaningful review. *McIntyre v. State*, 305 Kan. 616, Syl. ¶ 1, 385 P.3d 930 (2016); *Dragon v. Vanguard Industries*, 282 Kan. 349, 356, 144 P.3d 1279 (2006). When it is impossible to discern from the appellate record the factors on which the district court relied to find extraordinary circumstances, however, this court must remand for additional factual findings and legal conclusions. *Progressive Products, Inc. v. Swartz*, 292 Kan. 947, 961-62, 258 P.3d 969 (2011).

Alicia and Sam did not object to the sufficiency of the findings on the record. But instead of remanding for more complete findings, the Court of Appeals remanded "with directions to terminate the guardianship and conservatorship in a reasonable and timely manner." 2018 WL 4517544, at *7. Such a remedy carries with it the consequence that children will be separated and returned to the custody of parents who have been found to be providing them with inadequate parental care and who maintained minimal support and contact with them, and the parents would successfully circumvent statutorily mandated procedures for developing permanency and reintegration plans. Significantly, the court in several of the CINC proceedings here expressly found that "remaining in the home or returning home would be contrary to the welfare of the child(ren)." The CINC proceedings were terminated without any revision of that finding apparent in the record. The remedy ordered by the Court of Appeals overrides that finding and potentially places the children in custodial settings contrary to their welfare.

CONCLUSION

We therefore conclude that the better resolution is to remand this case to the district court for findings and legal conclusions that suffice to allow appellate review. The court should make factual findings about the circumstances and state those findings in its order. From there, the court should make a legal conclusion about whether those circumstances are extraordinary. If extraordinary circumstances exist, then the court should specify the factors leading to the determination that the best interests of the children supports maintaining or terminating the custodial relationships.

We address one final point raised by the guardians. They argue that this court lacks statutory jurisdiction to entertain this appeal. They contend that, by terminating the CINC proceedings without making permanency orders, the district court must have

intended the guardianship to be a permanent placement. They then argue, without citing authority, that the denial of a motion to change permanent custody is not an appealable order under the Code for Care of Children. But this case was filed in probate court, and K.S.A. 2018 Supp. 59-2401a(b)(5) permits appeals from "any final order, judgment or decree entered in any proceeding pursuant to: . . . the act for obtaining a guardian or conservator, or both . . . ." We have no difficulty holding that this statutory language is broad enough to encompass an order denying a motion to terminate a guardianship.

However, the issue highlights the confused nature of the proceedings below. Alicia and Sam, the Court of Appeals, and, to some extent, the district court sought to take the care of the children out of the purview of the Code for Care of Children and place it in the jurisdiction of the Probate Code. This shift violated the stated purpose of the Code for Care of Children, which was to make "the safety and welfare of a child . . . paramount in all proceedings under the code." K.S.A. 2018 Supp. 38-2201(b)(1). The parties and the courts are now faced with the task of sorting out the proceedings that have taken place under these separate and distinct statutory schemes. It is anticipated that the district court will accomplish that task on remand.

Judgment of the Court of Appeals reversing the district court is reversed. We remand to the district court with directions as stated above.