NOT DESIGNATED FOR PUBLICATION

Nos. 114,508
114,509
114,510

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

In the Interest of:  Ky.H., DOB XX/XX/2003, a Male;
Ke.H., DOB XX/XX/2002, a Female; and
J.S., DOB XX/XX/2013, a Male.

MEMORANDUM OPINION

Appeal from Wyandotte District Court; DANIEL CAHILL, judge. Opinion filed March 18, 2016. Affirmed.

*Christopher Cuevas*, of Kansas City, for appellant natural mother.

*Patricia Aylward-Kalb*, of Kansas City, for appellant natural father

*Ashley Hutton*, assistant district attorney, and *Jerome A. Gorman*, district attorney, for appellee.

Before MALONE, C.J., MCANANY and POWELL, JJ.

*Per Curiam*:  In this consolidated appeal, S.H. (Mother) appeals the district court's decision to terminate her parental rights over Ke.H., Ky.H., and J.S. Mother argues that there was insufficient evidence to find that she was unfit, and even if she was unfit, there was insufficient evidence to find that her unfitness was unlikely to change in the foreseeable future. Mother also argues that the district court abused its discretion when it found that termination of her parental rights was in the best interests of the children. T.S. (Father) also appeals the district court's decision to terminate his parental rights over J.S. Father argues that there was insufficient evidence to find him unfit based on his failure to comply with a reasonable court-approved plan directed toward reintegration with J.S.,

1

there was insufficient evidence to find that his unfitness was unlikely to change in the foreseeable future, and the district court erred when it denied his request to continue the termination hearing. For the reasons stated herein, we affirm the district court's judgment.

FACTUAL AND PROCEDURAL BACKGROUND

On May 6, 2014, the State filed petitions requesting the district court to find that Ke.H., age 11; Ky.H., age 10; and J.S., age 5 months, were children in need of care (CINC). The petitions alleged that the children were without adequate parental care, control, or subsistence, which was not due to the lack of financial means of their parents. The petition also alleged that the children were without the care or custody necessary for their physical, mental, or emotional health.

The factual basis for the petitions arose, in part, out of a report the Department for Children and Families (DCF) received on January 15, 2014. According to the report, Mother had the cognitive level of a preteen and Father was incarcerated. The report indicated that Mother's mother, C.H., was the primary caregiver of J.S. C.H. initially wanted guardianship of J.S. because his parents could not care for him. On April 29, 2014, C.H. reported that Mother was living on the street and refusing to return home. Father had been released from jail and was living with Mother on the street, but he recently had been incarcerated again. C.H. was overwhelmed and could no longer care for J.S and asked for J.S. to be placed for adoption. C.H. also sometimes cared for Ke.H. and Ky.H., who was autistic. C.H. was concerned that Mother's absence would not allow Ke.H. and Ky.H. to have their medical, dental, and school needs met.

DCF was unable to contact Mother. Because Mother was living on the streets and could not care for the children and because C.H. could no longer care for J.S., DCF believed an emergency existed that necessitated out-of-home placement. Thus, DCF filed an application for an ex parte order of protective custody for the children. On May 6,

2

2014, the district court entered an ex parte order of protective custody for J.S. The district court entered an order of temporary custody of J.S. with DCF on May 8, 2014. On May 29, 2014, the district court entered an order of temporary custody, finding that Ke.H. and Ky.H. were likely to sustain harm if not immediately removed from the home.

On May 29, 2014, the children were adjudicated in need of care. The district court ordered that the children remain in DCF custody. The district court also ordered that the parents: maintain and provide verification of stable and appropriate housing; maintain and verify a stable income; sign all necessary releases of information; contact their court services officer once a month and before changes of address or telephone numbers; complete a psychosocial assessment and follow recommendations; complete a psychological assessment and follow recommendations; complete parenting education and provide verification; and have all visits supervised by KVC.

On July 10, 2014, the district court held a disposition hearing and ordered that its prior rulings should continue. The district court found that reintegration with the parents may or may not be viable. The district court ordered that Mother shall apply for services with the Community Development Disabilities Organization (CDDO). The district court held a review hearing on November 18, 2014, and ordered that all of its prior rulings continue. The district court held another review hearing on January 12, 2015.

On April 23, 2015, the State filed a motion to terminate the parental rights of Mother and Father. The State alleged that (1) Mother suffered from an emotional illness, mental illness, mental deficiency, or physical disability of such duration or nature as to render her unlikely to care for the ongoing physical, mental, and emotional needs of her children; (2) Mother and Father had physically, mentally, or emotionally neglected their children; (3) Father had been convicted of a felony and served a term of imprisonment; (4) Mother and Father had demonstrated a lack of effort to adjust their circumstances, conduct, or conditions to meet the needs of the children; (5) Father had failed to maintain

3

regular visitation, contact, or communication with J.S. or his custodian; and (6) Mother and Father had failed to carry out a reasonable plan approved by the court directed toward the integration of the children into the parental home.

The district court held a termination hearing on August 10, 2015. Mother and Father were present for the hearing. Father had been out of prison for 3 weeks and requested a continuance so he could prepare for the hearing. The district court denied Father's request for a continuance, and the State proceeded to offer evidence.

The State first called Mother to testify. Mother acknowledged that C.H. provided much of the care for Ke.H. and Ky.H. She acknowledged that she was the fulltime caregiver for J.S. about "half the time." Mother was unemployed but received SSI income. She currently lived with her brother and another roommate. Because of the limited room, the children could not live with Mother at her current residence. Mother testified that during the pendency of the case she had lived in quite a few houses. She could not remember how many places she had lived, but it was more than three or four. Mother testified that during this time she was also homeless for more than a few weeks.

Mother acknowledged that she had not kept in contact with her court services officer. Mother remembered completing a mental health assessment, but she did not complete the recommended treatment. Mother also had applied for CDDO services but was not following the requirements to receive those services. Mother remembered she was supposed to complete parenting classes but did not complete them because she did not have transportation. Mother's overall plan was to live with Father when he was out of prison so that he could help her care for the children. However, Mother did not have any idea when she would be ready to reintegrate with any of the children.

Father also testified at the termination hearing. Father became aware Mother was pregnant with J.S. and that he was the Father during the first month of pregnancy. When

4

J.S. was born, Father was incarcerated in Johnson County. Father had absconded from custody for 2 months in the spring of 2014. Father testified that during this time, he went to C.H.'s house to see J.S. and provided Mother with formula and diapers. Father was placed back into custody after 2 months, until he was released 3 weeks prior to the hearing. Father testified that he was aware of the CINC case during his incarceration. Father received papers regarding the case and had his sister contact his attorney.

At the time of the hearing, Father was unemployed. In the 3 weeks Father had been out of custody, he had lived at three different locations. He currently was living with several friends. Due to lack of space, Father would need to look for another place in order to reintegrate with J.S. Father testified he was aware there were court orders in place for him to complete, but he had never asked to see those orders. Father testified he was going to attempt to get a stable home, find a job, and help Mother care for J.S. because Mother could not do it on her own. Ultimately, Father testified he wanted the court to give him more time to follow its orders so he could help Mother get custody of J.S.

Amber Carlile, case manager at KVC, testified for the State. She testified that while the case was pending she had sent approximately five letters to Father. Carlile testified that she never received any response to the letters from Father. Jason Lericos, another case manager at KVC, also testified for the State. Lericos testified that he had concerns regarding the parents' ability to care for all three children at the same time. He also testified that there was no notation in his file that Father had ever been in contact with KVC about court orders. Lericos stated that all three children had permanency resources available to them and he believed that termination of parental rights was in the best interests of the children. Finally, Milton Ruble testified that he was the foster parent for J.S. and that Father had never contacted J.S. while the case was pending.

After hearing the evidence, the district court made the following findings: (1) Mother and Father suffered from an emotional or mental illness or deficiency to such

duration or nature that it rendered them unable to care for the ongoing needs of the children pursuant to K.S.A. 2015 Supp. 38-2269(b)(1); (2) Father had, through his incarceration, physically, mentally, and emotionally neglected J.S. pursuant to K.S.A. 2015 Supp. 38-2269(b)(4); (3) Father had been convicted of a felony and served a term of imprisonment, and his efforts to maintain a relationship with J.S. were insufficient given the resources available to him, pursuant to K.S.A. 2015 Supp. 38-2269(b)(5); (4) Mother and Father had demonstrated a lack of effort on their part to adjust their circumstances, conduct, or conditions to meet the needs of the children pursuant to K.S.A. 2015 Supp. 38-2269(b)(8); and (5) Mother and Father had failed to carry out a reasonable plan approved by the district court directed toward integration of the children into the parental home pursuant to K.S.A. 2015 Supp. 38-2269(c)(3).

After making these findings, the district court found by clear and convincing evidence that (1) Father and Mother were unfit parents by reason of conduct or condition which rendered them unable to properly care for the children and this conduct or condition was unlikely to change in the foreseeable future; (2) reintegration with Mother or Father was not a viable alternative; and (3) upon giving primary consideration to the physical, mental, or emotional needs of the children, termination of Mother's and Father's parental rights was in the children's best interests. Therefore, the district court terminated Mother's and Father's parental rights. The district court also filed a journal entry enumerating its findings. Mother and Father timely appealed.

TERMINATION OF MOTHER'S PARENTAL RIGHTS

On appeal, Mother first argues that the district court erroneously found that she was an unfit parent. Specifically, Mother argues that there was not clear and convincing evidence that she was unfit because she had made progress on multiple parts of the reintegration plan, she had demonstrated some parenting skills, she had previously helped care for the children, and she had never caused harm to the children.

The State argues that there was clear and convincing evidence to find Mother unfit because she had an emotional illness, mental illness, mental deficiency, or physical disability of such duration or nature as to render her unable to care for the ongoing physical, mental, and emotional needs of the children. The State also argues that Mother was unfit because there was an utter lack of effort on her part to adjust her circumstances, conduct, or condition to meet the needs of the children. Finally, the State argues that Mother was unfit because she had failed to carry out a reasonable plan approved by the district court directed toward the integration of her children into her home.

When this court reviews a district court's termination of parental rights, we consider whether, after review of all the evidence, viewed in the light most favorable to the State, we are convinced that a rational factfinder could have found it highly probable, *i.e.*, by clear and convincing evidence, that the parent's rights should be terminated. *In re K.W.*, 45 Kan. App. 2d 353, 354, 246 P.3d 1021 (2011). In making this determination, we do not weigh conflicting evidence, pass on the credibility of witnesses, or redetermine questions of fact. *In re B.D.-Y.*, 286 Kan. 686, 705, 187 P.3d 594 (2008).

We must first determine what evidence will be considered to support the district court's findings. Although the children's social files are included in the record on appeal and the State cites them in its brief, they were never offered or entered into evidence at the termination hearing, and the district court did not take judicial notice of the social files. K.S.A. 2015 Supp. 38-2249(b) states that "[t]he judge presiding at all hearings under this code shall not consider or rely upon any report not properly admitted according to the rules of evidence, except as provided by K.S.A. 2015 Supp. 38-2219, and amendments thereto." K.S.A. 2015 Supp. 38-2219(e)(2) further states that no fact or conclusion derived from a report ordered by the court "shall be used as the basis for an order of the court unless the information has been admitted into evidence following an opportunity for any party or interested party to examine, under oath, the person who prepared the report." Because the reports contained in the social files were not properly

7

admitted into evidence, this court cannot consider them when evaluating the sufficiency of the evidence to terminate parental rights. See *In re R.B.S.*, 29 Kan. App. 2d 1023, 1028, 36 P.3d 300 (2001) (not considering social file contents when it was included in the record on appeal but not admitted into evidence at the district court).

K.S.A. 2015 Supp. 38-2269(a) provides that a district court may, after a child has been adjudicated in need of care, terminate parental rights if it finds "by clear and convincing evidence that the parent is unfit by reason of conduct or condition which renders the parent unable to care properly for a child and the conduct or condition is unlikely to change in the foreseeable future." K.S.A. 2015 Supp. 38-2269(b) provides a nonexhaustive list of conditions that the district court must consider when determining whether a parent is unfit. One of these conditions is an "[e]motional illness, mental illness, mental deficiency or physical disability of the parent, of such duration or nature as to render the parent unable to care for the ongoing physical, mental and emotional needs of the child." K.S.A. 2015 Supp. 38-2269(b)(1).

After reviewing the evidence presented in district court, in the light most favorable to the State, a rational factfinder could not have found it highly probable, *i.e.*, by clear and convincing evidence, that Mother suffered from an emotional illness, mental illness, mental deficiency, or physical disability of such duration or nature as to render her unable to care for the ongoing physical, mental, and emotional needs of her children. The only evidence regarding Mother's mental deficiency came from her own testimony. Mother testified that she had to take special classes, have special teachers, and have an IEP learning plan in high school because she was a slow learner. She also testified that she was receiving SSI benefits because of her learning disability. This evidence is insufficient to support termination of parental rights under K.S.A. 2015 Supp. 38-2269(b)(1). There was no evidence regarding the severity or permanency of Mother's learning disability or whether it was of such duration or nature as to render her unable to care for the ongoing

8

physical, mental, and emotional needs of her children. Without such evidence, the district court erred in finding Mother unfit on this basis.

However, as the State points out, Mother's mental deficiency was only one of three grounds on which the district court found Mother unfit. The district court also found Mother unfit because there was a lack of effort on her part to adjust her circumstances, conduct, or condition to meet the needs of the children under K.S.A. 2015 Supp. 38-2269(b)(8). The final ground for finding Mother unfit was that she had failed to carry out a reasonable plan approved by the district court directed toward the integration of her children into her home. K.S.A. 2015 Supp. 38-2269(c)(3).

Mother testified that she had stable housing at the time of the termination hearing, but she could not have the children live with her due to a lack of space. During the pendency of the CINC case, Mother had lived at "way more" than four different addresses and been homeless for more than 3 weeks. To get housing with more space, Mother needed to get a job, but she did not have a job at the time of the hearing. Mother also testified that she could not identify her court services officer and she had not kept in contact with the officer. Mother completed a mental health assessment, but she did not follow the recommendation for services. Mother also had applied for CDDO services, but she was not following the requirements for those services. Mother also testified that she had stopped attending parenting classes due to a lack of transportation. Ultimately, Mother could not identify any court orders that she had actually completed.

Mother's testimony was clear that she lacked suitable housing throughout the case and was not any closer to obtaining suitable housing on the date of the termination hearing. Further, Mother testified that she had failed to accept many of the services offered to aid her in the reintegration of her children. This testimony was sufficient for the district court to find it highly probable that Mother was unfit because of a lack of effort on her part to adjust her circumstances, conduct, or condition to meet the needs of

9

the children and because she failed to carry out a reasonable plan approved by the court directed toward the integration of her children into her home.

Next, Mother argues that there was insufficient evidence for the court to find by clear and convincing evidence that the conduct or condition which rendered her unfit was unlikely to change in the foreseeable future. In determining whether a parent's unfitness is likely to change in the foreseeable future, the court must consider the foreseeable future from the child's perspective because the time perception of a child differs from that of an adult. *In re R.S.*, 50 Kan. App. 2d 1105, 1117, 336 P.3d 903 (2014).

When viewed through the children's perspective of time, Mother's failure to comply with the reintegration plan and her failure to adjust her circumstances to meet the needs of her children was not likely to change in the foreseeable future. At the time of the termination hearing, the CINC case had been pending for 15 months. Nothing in Mother's testimony indicated how she would adjust her circumstances or comply with the plan in the future. She testified that she needed a job to obtain suitable housing, but she did not testify about any efforts to obtain a job. She failed to complete most of the tasks required in her reintegration plan, and she refused services offered by the State. Ultimately, Mother testified that she did not have any idea when she would be ready to reintegrate with any of the children. Mother's testimony provided clear and convincing evidence that the conduct or condition making her unfit was not likely to change in the foreseeable future.

Finally, Mother argues that the district court erred in finding that termination of her parental rights was in the best interests of the children. The district court is in the best position to make findings on the best interests of the child, and its judgment will not be disturbed in the absence of an abuse of judicial discretion. *In re K.P.*, 44 Kan. App. 2d 316, Syl. ¶ 4, 235 P.3d 1255 (2010). To determine whether termination of parental rights

is in the best interests of a child, the court shall give primary consideration to the physical, mental, and emotional needs of the child. K.S.A. 2015 Supp. 38-2269(g)(1).

Here, Mother did not have the ability to reintegrate with the children at the time of the hearing, nor did she have any plan or timeframe for achieving reintegration. While Mother had attempted to complete some court orders, she had failed to complete most of the orders and had no immediate plans to complete them. Meanwhile, the children had permanency resources available to them if parental rights were terminated. We conclude the district court did not abuse its discretion by finding that termination of Mother's parental rights was in the best interests of the children.

TERMINATION OF FATHER'S PARENTAL RIGHTS

Father first argues that the district court erred when it terminated his parental rights without having previously provided him with court orders reasonably calculated to achieve integration with J.S. The State argues that Father had an opportunity to complete his incarceration in Johnson County and then complete the court orders required for reintegration with J.S., but he did not take advantage of this opportunity. The standard of review for the termination of Father's parental rights is the same standard used to review the termination of Mother's parental rights.

The district court found that Father was an unfit parent for multiple reasons, including a finding that Father had failed to carry out a reasonable plan approved by the district court directed toward integration of J.S. into the parental home pursuant to K.S.A. 2015 Supp. 38-2269(c)(3). But due to Father's incarceration throughout most of the CINC case, he had never been presented with a court plan designed for his integration with J.S. Because Father had not been presented with a court plan for integration with J.S., the district court erred by finding that Father was unfit because he did not comply with such a plan. See *In re M.F.*, No. 108,460, 2013 WL 196610, at *2 (Kan. App. 2013)

11

(unpublished opinion) (holding that there was not sufficient evidence that father had failed to carry out a reasonable plan for reintegration because he had not been presented with such a plan because he had been incarcerated for the prior 2 1/2 years).

However, Father's failure to carry out a reasonable plan approved by the district court directed toward integration of J.S. into the parental home was not the only ground upon which the district court found Father unfit. The district court also found Father unfit on the grounds that (1) Father had, through his incarceration, mentally and emotionally neglected J.S. pursuant to K.S.A. 2015 Supp. 38-2269(b)(4); (2) Father had been convicted of a felony and served a term of imprisonment, and his efforts to maintain a relationship with J.S. were insufficient given the resources he had available to him, pursuant to K.S.A. 2105 Supp. 38-2269(b)(5); and (3) Father had demonstrated a lack of effort to adjust his circumstances, conduct, or condition to meet the needs of J.S. pursuant to K.S.A. 2015 Supp. 38-2269(b)(8). On appeal, Father makes no attempt to challenge the sufficiency of the evidence supporting any of these findings of unfitness. An issue not briefed by an appellant is deemed waived and abandoned. *Superior Boiler Works, Inc. v. Kimball*, 292 Kan. 885, 889, 259 P.3d 676 (2011). Therefore, although there was insufficient evidence to find Father unfit for failure to comply with a court-approved plan, the findings that Father was unfit on the additional grounds were not erroneous.

Father briefly argues that the evidence did not support the finding that the conduct or condition that made *Mother* unfit was unlikely to change in the foreseeable future. However, Father never argues why the evidence was insufficient to support the finding that *his* unfitness was unlikely to change in the foreseeable future. Father also briefly states that he does not agree with the district court's finding that it was in the best interests of J.S. for Father's parental rights to be terminated. However, Father never argues why the district court's finding was an abuse of discretion. As previously stated, issues not briefed by an appellant are deemed waived and abandoned. *Superior Boiler Works, Inc.*, 292 Kan. at 889.

In sum, there was clear and convincing evidence to support the district court's findings that Father was unfit by reason of conduct or condition which rendered him unable to properly care for J.S. and this conduct or condition was unlikely to change in the foreseeable future. Also, the district court did not abuse its discretion in finding that termination of Father's parental rights was in the best interests of J.S.

Finally, Father argues that the district court erred when it denied his request for a continuance of the termination hearing so that he could speak with his attorney and prepare to fully participate at the hearing. Father argues that his fundamental constitutional right to be a parent and care for J.S. far outweighed any expediency of denying him a continuance. The denial of a continuance in a termination of parental rights case is reviewed for an abuse of discretion. *In re J.M.B.*, No. 112,578, 2015 WL 4460578, at * 5 (Kan. App. 2015) (unpublished opinion). A judicial action constitutes an abuse of discretion if the action (1) is arbitrary, fanciful, or unreasonable; (2) is based on an error of law; or (3) is based on an error of fact. *Northern Natural Gas Co. v. ONEOK Field Services Co.*, 296 Kan. 906, 935, 296 P.3d 1106 (2013).

The basis for Father's request for a continuance was that he needed time to prepare for the termination hearing. However, the record refutes this assertion. Father was aware J.S. was his child; he was aware of the CINC case during his incarceration; he received papers about the case during his incarceration; he knew he had a court appointed attorney; and he had his sister contact his attorney during his incarceration. Father had time to prepare for the termination hearing if he had wanted to prepare. He could have communicated with his attorney while he was incarcerated and met with his attorney in the 3-week period between his release and the termination hearing. Because Father had the opportunity to prepare for the termination hearing, the district court did not abuse its discretion by denying Father's request for a continuance of the hearing.

Affirmed.