NOT DESIGNATED FOR PUBLICATION

No. 124,350

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

In the Interest of Z.J.,
A Minor Child.

MEMORANDUM OPINION

Appeal from Sedgwick District Court; MICHAEL J. HOELSCHER, judge. Opinion filed June 3, 2022. Affirmed.

*Grant A. Brazill*, of Morris, Laing, Evans, Brock & Kennedy, Chartered, of Wichita, for appellant natural Father.

*Kristi D. Allen*, assistant district attorney, and *Marc Bennett*, district attorney, for appellee.

Before ARNOLD-BURGER, C.J., WARNER and CLINE, JJ.

PER CURIAM: This is an appeal by Father of the termination of his parental rights to his toddler son, Z.J. Father argues the district court's finding of unfitness was not supported by clear and convincing evidence. Father also argues the district court abused its discretion in finding that terminating his parental rights was in the best interests of Z.J. After a careful review of the record, we find no error and affirm.

FACTUAL AND PROCEDURAL HISTORY

In December 2017, the State petitioned to have two-year-old Z.J. declared a child in need of care. The petition alleged that Mother had a history of using illegal substances, including methamphetamine, did not have stable housing, and was unable to provide

1

appropriate medical and parental care for her children. The background prompting the filing of the petition is not in dispute.

In February 2017, the Department of Children and Families (DCF) received a report concerning maternal neglect of Z.J. Z.J. had a gastrostomy tube (G-tube) and was admitted to the hospital because he was failing to thrive and not gaining adequate weight. Z.J.'s G-tube was leaking and there were concerns that Mother was not correctly feeding him. Nine months later, Mother tested positive for methamphetamine and marijuana. DCF also had ongoing concerns relating to the medical care of Z.J. She admitted to being overwhelmed, missing scheduled doctor's appointments, and failing to follow through on recommendations. She also struggled with housing stability. DCF moved Z.J. to an out-of-home placement in December 2017.

In the meantime, Father had pending criminal charges for criminal possession of a controlled substance, possession of stolen property, criminal possession of a firearm, criminal carrying of a weapon, and theft. When the petition was filed, Father was in custody at the Sedgwick County Jail serving an 18-month sentence.

A social worker spoke with Father while he was in custody. He acknowledged that when he and Mother were together, they used illegal drugs. Father said that he did not wish to relinquish his parental rights and wanted to visit Z.J. The petition alleged that Father knew that Mother failed to provide a safe environment for Z.J. and that Father failed to intervene.

Father appeared at the December 2017 hearing for temporary custody and waived his right to an evidentiary hearing. The district court granted DCF's petition for temporary custody and ordered that Z.J. would remain in DCF custody. Later at the March 2018 adjudication hearing Father entered a statement of no contest to the child in

need of care petition. The district court adjudicated Z.J. as a CINC and ordered that the child would remain in DCF custody and remain in out-of-home placement.

In July 2019, the district court ordered that Z.J. would remain in DCF custody but that DCF could return him Mother's home. In December 2019, the district court ordered that Mother would have sole legal custody over Z.J. and that she should allow Father reasonable parenting time at her discretion. Father was released from prison at around the same time. A social worker assigned to the case reported that Mother was willing to allow supervised visits between Z.J. and Father in her home, so long as Father followed court orders and was sober.

In February 2020, the district court ordered that Z.J. be removed from Mother's home because she submitted a urinalysis that was positive for methamphetamine. At the same time, Father tested positive for cocaine and marijuana and DCF found that he was not an appropriate placement. DCF placed Z.J. in an out-of-home placement.

In March 2020, the State moved to terminate Father's parental rights. In the petition, the State noted that Father failed to appear at a July 2018 review hearing and at a separate permanency hearing. He also failed to appear at an October 2018 permanency hearing. He failed to appear at two more hearings, one in March 2019 and the other in April 2019.

In early February 2020, a licensed permanency specialist reported that Father saw the child regularly and was a good co-parent. Less than two weeks later, Father tested positive for cocaine and marijuana when ordered to provide a UA at a scheduled permanency hearing.

The petition alleged that Father was an unfit parent because of his drug use, the failure of reasonable efforts made by appropriate agencies to rehabilitate the family, a

lack of effort on Father's part to change his circumstances, conduct, or conditions to meet Z.J.'s needs, and a failure to carry out a reasonable plan directed toward integrating Z.J. into his parental home. The district court conducted a two-day trial on the matter in May 2021.

At trial, Father testified that he was currently in custody at the Sedgwick County jail and had been there since early April 2021. Police arrested him on new charges for criminal possession of a firearm, and he had a plea scheduled in late May. Father acknowledged that he had been in prison when Z.J. was first removed from Mother's custody and that the jail had not released him until June 2019. While he was in custody, he had no contact with Z.J. Father also acknowledged using methamphetamine while he and Mother were together in the past. He also admitted to using drugs while this case was pending, such as when he tested positive for methamphetamine and marijuana in November 2020. Father agreed that he continued using illegal drugs up until his arrest in April 2021.

Father testified that he was waiting for a room in an inpatient drug treatment program but that could take a couple of months to happen. Father frankly admitted he would not be able to care for Z.J., even if he received probation when he entered his plea in May.

Z.J.'s foster father also testified at the trial. According to him, Father had not had an in-person visit with Z.J. since DCF had placed Z.J. at the foster home in February 2020. Father did have some video calls with Z.J., but it totaled around two and a half hours of video calls since February 2020. The first time Father tried to schedule an in-person visit with Z.J. was about one month before the trial began. According to Z.J.'s foster father, Z.J. would rarely ask about his Father.

4

Kimberly Fulghum, the permanency specialist assigned to the case, also testified at trial. Fulghum testified that she told Father that he needed to complete a referral to obtain inpatient drug treatment and that she had provided the information on how to do so in February 2021 but had not heard back from Father since. According to Fulghum, Father still needed to complete drug treatment and would need to obtain some sort of employment because, as she understood it, his business went under, which is why he had returned to the area. Fulghum did not think that giving Father more time to become a fit parent would be beneficial given that he had failed to make significant steps toward becoming fit since the case started.

After considering the evidence, the district court terminated Father's parental rights in June 2021. Along with the reasons stated in the petition, the court found that Father failed to maintain regular visitation, contact, or communication with Z.J. While explaining its decision, the district court also noted that Father did not have his own residence and that Father and Mother were involved in a domestic disturbance in April 2021—shortly before the trial began—that caused Mother to be injured.

Father timely appealed.

ANALYSIS

On appeal, Father makes one primary argument—that there was not sufficient evidence to support the district court's finding that Father was unfit and that termination was in the best interests of the child.

I.    THE LAW REGARDING TERMINATION OF PARENTAL RIGHTS IS WELL-SETTLED.

A parent has a constitutionally recognized fundamental right to a parental relationship with his or her child. See *Santosky v. Kramer*, 455 U.S. 745, 753, 758-59,

102 S. Ct. 1388, 71 L. Ed. 2d 599 (1982); *In re B.D.-Y.*, 286 Kan. 686, 697-98, 187 P.3d 594 (2008). For these reasons, parental rights for a child may be terminated only upon clear and convincing proof of parental unfitness. K.S.A. 2020 Supp. 38-2269(a); *Santosky*, 455 U.S. at 769-70; *In re R.S.*, 50 Kan. App. 2d 1105, 1113, 336 P.3d 903 (2014).

A district court may terminate parental rights only after a child has been adjudicated to be a child in need of care and the court finds by clear and convincing evidence that

- the parent is unfit and unable to care properly for a child;
- the conduct or condition that renders the parent unfit is unlikely to change in the foreseeable future; and
- by a preponderance of evidence, it is in the best interests of the child to terminate parental rights.

See K.S.A. 2020 Supp. 38-2269(a), (g)(1); *In re R.S.*, 50 Kan. App. 2d at 1115-16.

A.      *Determining unfitness*

Our statutes list nine nonexclusive factors the district court may rely on to determine whether a parent is unfit. See K.S.A. 2020 Supp. 38-2269(b). Any one of those factors alone may be grounds to terminate parental rights. K.S.A. 2020 Supp. 38-2269(f). When the child is not in the parents' physical custody—as here—the district court must also consider four more factors listed in K.S.A. 2020 Supp. 38-2269(c).

B.      *The foreseeable future*

When determining whether a parent's conduct is likely to change in the foreseeable future, the court considers the foreseeable future from the child's perspective because children experience time differently than adults. K.S.A. 2020 Supp. 38-2201(b)(4), *In re R.S.*, 50 Kan. App. 2d at 1117. Courts can consider a parent's past conduct as evidence regarding the reasonable likelihood of any future change in parental fitness. *In re M.S.*, 56 Kan. App. 2d 1247, 1264, 447 P.3d 994 (2019).

C.      *The best interests of the child*

In deciding whether termination of parental rights is in the best interests of the child, the court must give primary consideration to the physical, mental, and emotional needs of the child. K.S.A. 2020 Supp. 38-2269(g)(1). The child's best interests finding must be supported by a preponderance of evidence and we review the court's decision for an abuse of discretion. *In re R.S.*, 50 Kan. App. 2d 1115-16.

D.      *Our standard of review*

In reviewing a district court's termination of parental rights, we view all evidence in the light most favorable to the prevailing party to determine whether a rational fact-finder could have found it highly probable by clear and convincing evidence that parental rights should be terminated. *In re K.W.*, 45 Kan. App. 2d 353, 354, 246 P.3d 1021 (2011). In making this determination, we do not "weigh conflicting evidence, pass on credibility of witnesses, or redetermine questions of fact." *In re B.D.-Y.*, 286 Kan. at 705.

II.    CLEAR AND CONVINCING EVIDENCE SUPPORTS THE DISTRICT COURT'S FINDINGS THAT FATHER WAS UNFIT AND HIS CONDITION WAS UNLIKELY TO CHANGE IN THE FORESEEABLE FUTURE.

Under K.S.A. 2020 Supp. 38-2269(f), the district court may terminate a person's parental rights if it finds that any single listed factor is present. The district court can consider several factors listed in K.S.A. 2020 Supp. 38-2269(b) and (c). We will address those most relevant here below.

### A. Father's drug use

First, the district court found that Father was an unfit parent because of his "use of intoxicating liquors or narcotic or dangerous drugs of such duration or nature as to render the parent unable to care for the ongoing physical, mental or emotional needs of the [child]." See K.S.A. 2020 Supp. 38-2269(b)(3). Father argues there was insufficient evidence to show that Father's drug use made him an unfit parent.

In support, Father cites *In re J.W.B.*, Nos. 123,606, 2021 WL 3469198, at *7 (Kan. App. 2021) (unpublished opinion), where this court held that the father in that case was "generally correct [that] the use of drugs, in and of itself, is not an adequate basis to terminate parental rights." However, the court in that case held that the district court's finding of unfitness was correct because the district court found that the father's drug use harmed his children. 2021 WL 3469198, at *7.

In the current case, the district court found that Father admitted to continuing to use illegal drugs and had never completed a substance abuse treatment program. At trial, Father himself acknowledged that his drug abuse was not conducive to providing a safe environment for Z.J. Mother testified at trial that she thought Father was using drugs when they got into an altercation—which caused Mother to be injured—in April 2021

because of how he was acting. And Father had been convicted of criminal charges as a result of his drug possession and use.

When viewing the evidence in a light most favorable to the State, there was clear and convincing evidence to show that Father's continued drug use rendered him an unfit parent as defined by K.S.A. 2020 Supp. 38-2269(b)(3).

### B. Failure of reasonable efforts by appropriate agencies

Father next argues that there was insufficient evidence to support the district court's decision that he was an unfit parent under K.S.A. 2020 Supp. 38-2269(b)(7) which requires the district court to consider whether there had been a "failure of reasonable efforts made by appropriate public or private agencies to rehabilitate the family."

This court has held that agencies are "not required to exhaust any and all resources to rehabilitate a parent" and a "herculean effort" to guide a parent through the responsibilities of reintegration is not required in order to find a parent unfit. *In re J.R.,* No. 104,975, 2011 WL 2175953, at *5 (Kan. App. 2011) (unpublished opinion).

There was sufficient evidence to support the district court's decision. First, the social worker's report makes it clear that DCF made reasonable efforts to reintegrate Father with Z.J. At the onset of the case Father was incarcerated and was not actively participating in reintegration. After he was released in the summer of 2019, Z.J. was being reintegrated with Mother at her home. At that time, Mother had discretion to allow Father to visit Z.J., which he did a couple of times. In March 2020, Father lived in Western Kansas, and worked in Colorado. He reported to his case worker that he was trying to find a drug treatment provider in Colorado so that he could get into treatment and take drug tests. In May 2020, Father was working in California. His case worker

asked for a time that they could facetime to go over court orders, but, based on the record, it does not appear that this happened.

Father's case worker contacted him in late June 2020 and told him about a change in court dates. When the case worker tried contacting him in early September 2020, his phone played a message that it was not currently accepting calls. She texted him and asked for updated contact information because she had heard he was working in Michigan or Wisconsin. His case worker later learned that Father would soon be beginning to work in Florida and planned to be there for a year, although he said he could return to Kansas whenever he wanted since he was self-employed. Father's case worker informed him that he needed to show that he was clean, completing court orders, and that he could parent Z.J.

In November 2020, Father's case worker noted that Father was having inconsistent video calls with Z.J., that Father was not completing case orders, and was not maintaining contact with her.

Father's case worker was "shocked" to see him in February 2021, because she did not know that he had returned to Kansas. Father reported that his business fell apart and that he had returned to Wichita. He admitted to using drugs and asked for a referral to get inpatient treatment. Father's case worker provided the referral but did not hear from him on whether he had followed through. When his case worker tried to contact him in April 2021, Father's phone again said that it was not accepting calls.

When viewing the evidence in a light most favorable to the State, there was sufficient evidence to support the district court's finding that DCF made reasonable efforts to rehabilitate Father with Z.J. and that those efforts failed. Based on the record, it seems that Father spent most of the case either in custody or traveling around the country as part of his self-employed business. He did little to nothing to advance his case plan

10

goals, seek drug treatment, or spend consistent time demonstrating his ability to parent Z.J. Because there was clear and convincing evidence to support this finding, the district court did not err in determining that Father was an unfit parent under K.S.A. 2020 Supp. 38-2269(b)(7).

C. *Father's failure to adjust his circumstances, conduct, or conditions to meet the needs of Z.J.*

Father then argues that there was insufficient evidence to support the district court's decision that he was unfit because of a lack of effort on his part to "'adjust [his] circumstances, conduct, or conditions to meet the needs'" of Z.J. See K.S.A. 2020 Supp. 38-2269(b)(8). But when viewing the evidence in a light most favorable to the State, there was sufficient evidence, and the district court did not err in its decision.

The most obvious example that Father has failed to change his circumstances, conduct, or condition is his continued drug use and his inability to avoid violating the law. Throughout the pendency of this case, Father was either in custody for violating the law or submitting positive drug tests. The case began when Father was incarcerated. After he was released, Father traveled the country for his self-employed business.

During the time he was out of prison, when Mother was considered an inappropriate placement because she failed a drug test, Father also tested positive for illegal drugs. His positive test occurred when the court ordered him to take a drug test at a scheduled permanency hearing. Father admitted to using illegal drugs up until his arrest in April 2021.

Reviewing the evidence in the light most favorable to the State, there is clear and convincing evidence supporting the district court's finding of Father's parental unfitness under K.S.A. 2020 Supp. 38-2269(b)(8).

11

*D. Father's failure to maintain regular visitation, contact, or communication with Z.J.*

Father next argues that the district court erred when it determined that he was an unfit parent because he failed to maintain regular visitation, contact, or communication with Z.J. as required by K.S.A. 2020 Supp. 38-2269(c)(2). Although, the State did not allege that Father was an unfit parent because of his failure to maintain regular visitation, contact, or communication with Z.J., the district court heard the evidence of it in the case. Z.J.'s foster parent testified that Father had had no in-person contact with Z.J. from February 2020 to the date of the hearing May 2021 although he was known to be in Wichita much of that time. The foster parents encouraged such contact, to no avail. Father did have Zoom contact with Z.J. over the phone, but the total Zoom time over 18 months was a mere two and a half hours.

While this factor does not ultimately impact the outcome of the case, there was sufficient evidence to support the district court's finding of unfitness under K.S.A. 2020 Supp. 38-2269(b)(8).

*E. Father's failure to carry out a reasonable plan directed toward reintegration of Z.J. in his home*

Father next argues that the plan for reintegrating him with Z.J. was unreasonable. Father argues that before Covid he was making great strides in completing his case plan and that during Covid he was doing the best he could in a challenging situation. But when viewing the evidence in a light most favorable to the State, the district court's decision was correct.

12

First, it is hard to see what great strides Father believes he was making before Covid lockdowns made it harder for him to complete his case plan. Father was incarcerated until mid to late 2019, and by February 2020 had submitted drug tests positive for cocaine and marijuana. And once Covid lockdowns started, Father, in a self-employed business, traveled the country for work. And while having employment is laudable, it does not change the fact that Father neglected the other aspects of his case plan. He failed to regularly submit drug tests, and when he did, they were positive; he failed to have significant visits with Z.J., either in person when it was possible or over video; he did not seek drug treatment; and he did not manage to avoid breaking the law.

Ultimately, Father was unable to achieve the reasonable case plan goals assigned to him. Because there was clear and convincing evidence to support this finding, the district court did not err in determining that Father was an unfit parent under K.S.A. 2020 Supp. 38-2269(c)(3).

## F. Father's unfitness because of conviction of a felony and imprisonment

Under K.S.A. 2020 Supp. 38-2269(b)(5), a district court can find a parent unfit because of the conviction of a felony and imprisonment. In its recitation of the reasons for finding Father unfit, the district court mentioned K.S.A. 2020 Supp. 38-2269(b)(5) but did not include it in the journal entry terminating Father's parental rights.

There was no evidence presented that Father would be incarcerated as a result of his pending plea. His contention that he would likely get probation was uncontested. Assuming that the district court did find that Father was unfit under K.S.A. 2020 Supp. 38-2269(b)(5), the district court erred. But it does not change the outcome of the case.

As stated above, the presence of any single factor can be sufficient to establish grounds for termination of parental rights. K.S.A. 2020 Supp. 38-2269(f). Father had a

13

long time to make the changes necessary to show that he could be a fit parent for Z.J. and failed to do so. Reviewing the evidence in the light most favorable to the State, there is clear and convincing evidence supporting the district court's finding of Father's parental unfitness and that he was unlikely to become fit in the foreseeable future.

III.     THE DISTRICT COURT DID NOT ABUSE ITS DISCRETION IN HOLDING THAT TERMINATION OF FATHER'S PARENTAL RIGHTS WAS IN THE BEST INTERESTS OF HIS CHILD.

Finally, Father argues that the district court erred when it found that Z.J.'s best interests would be served by terminating Father's parental rights because the district court merely cited that statute—rather than weighing the various factors on the record.

The decision of whether a child's best interests would be served by terminating parental rights is a "'highly discretionary call.'" *In re R.S.*, 50 Kan. App. 2d at 1114. Thus, we review the best-interests determination under this court's traditional abuse of discretion standard. *In re R.S.*, 50 Kan. App. 2d at 1115-16.

A judicial action constitutes an abuse of discretion if (1) it is arbitrary, fanciful, or unreasonable; (2) it is based on an error of law; or (3) it is based on an error of fact. *Biglow v. Eidenberg*, 308 Kan. 873, 893, 424 P.3d 515 (2018).

At the close of the termination hearing, the district court stated:

"The Court has considered whether termination of parental rights, as requested in the motion, is in the best interest of [Z.J.] I find that termination of the parental rights in this case is in the best interest of the minor child.

"In making this determination I recognized that the case must be decided in child time. I gave primary consideration to the physical, mental and emotional health of the

14

child. I find that in this case the physical, mental and emotional needs of the child will best be served by termination of parental rights.

"In making this determination I considered the factors that I have already specified here today, and I recognized that all these cases have to be decided in child time. As I have already mentioned, especially with regard to [Z.J.], these cases have been pending for nearly three and a half years now. And, unfortunately, we are no closer to any type of reintegration than we were at the beginning of these cases."

Under K.S.A. 2020 Supp. 38-2269(g)(1), if the district court finds a parent unfit, the court is then required to determine whether "termination of parental rights as requested in the petition or motion is in the best interests of the child." When making the determination, "the court shall give primary consideration to the physical, mental and emotional health of the child." K.S.A. 2020 Supp. 38-2269(g)(1).

Father's argument essentially boils down to a complaint that the district court's decision was legally inadequate because the district court did not do a specific weighing of the possible outcomes for Z.J. if parental rights were terminated versus Father maintaining his parental rights.

Generally, a party objecting to the sufficiency of a court's findings bears the responsibility to object to inadequate findings of fact and conclusions of law to give the district court an opportunity to correct any alleged inadequacies. *In re Guardianship and Conservatorship of B.H.*, 309 Kan. 1097, 1107-08, 442 P.3d 457 (2019). Father did not do so here. When there has not been an objection to a district court's findings of fact or conclusions of law based on inadequacy, an appellate court can presume the district court found all facts necessary to support its judgment. *State v. Jones*, 306 Kan. 948, 959, 398 P.3d 856 (2017).

15

Even if this court were not to use that presumption, a preponderance of evidence supports the district court's decision. Father had years to make the changes necessary to support and provide a stable home for Z.J., and he failed to do so. Father continued to use illegal drugs, continued violating the law, and generally made no changes in his life to address the many issues precluding him from being a fit parent to Z.J. He was incarcerated when the case began, and he was incarcerated again a month before the termination hearing for possessing a firearm. He was involved in a domestic violence incident with Z.J.'s mother just a month before the termination hearing where the police were called and her injuries documented. He testified that he needed to get into inpatient treatment, but that would take several months, and that he was still not able to care for Z.J.

Based on the record, we cannot say that the district court abused its discretion when it determined that terminating Father's parental rights was in Z.J.'s best interests.

Affirmed.