NOT DESIGNATED FOR PUBLICATION

No. 124,577

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

In the Interests of Z.S., E.S., and K.S.,
Minor Children.

MEMORANDUM OPINION

Appeal from Douglas District Court; PAUL R. KLEPPER, judge pro tem. Opinion filed August 26, 2022. Affirmed.

*Jennifer Martin Smith*, of Alderson, Alderson, Conklin, Crow & Slinkard, L.L.C., of Topeka, for appellant natural mother.

*Jon Simpson*, assistant district attorney, and *Suzanne Valdez*, district attorney, for appellee.

Before GREEN, P.J., ISHERWOOD and COBLE, JJ.

PER CURIAM: Under K.S.A. 38-2201(c)(1), a parent's disability cannot constitute the basis for the termination of that parent's parental rights without a specific showing that there is a causal relation between the disability and harm to the child.

In June 2019, Z.S. and E.S. were removed from Mother's care after a finding that the children were living in unsafe conditions and Mother was resisting help from social agencies. The children were adjudicated as children in need of care in August 2019. K.S., who was born during this adjudication in 2020, was also later adjudicated as a child in need of care.

Mother participated in a psychological evaluation early in the case and it was determined that Mother had cognitive issues. For example, Mother was diagnosed with Bipolar I and had a mental age of approximately nine years old. Mother was later diagnosed with Weiss-Kruszka syndrome.

After more than two years since the beginning of the case, the district court terminated Mother's parental rights. Mother timely appealed, arguing, in large part, that the district court impermissibly based its termination on her Weiss-Kruszka diagnosis without a causal link between the diagnosis and harm to the children. For the following reasons, we affirm.

FACTS

Z.S. (Y.O.B. 2018), E.S. (Y.O.B. 2019), and K.S. (Y.O.B. 2020) are the natural children of Mother. The children suffer from several medical issues. All three children have been diagnosed with Weiss-Kruszka Syndrome, which involves craniofacial abnormalities, developmental delay, feeding issues, and mild to moderate cognitive deficits. All three children suffer from aspiration, dysphagia, oral motor delay, and fine motor delay. E.S. and K.S. also suffer from gross motor delay and reflux. The children suffer from several other maladies beyond those, and E.S. has a feeding tube.

The children's fine motor delays affect their ability to grasp, interact with objects, and determine where their body is located in their surroundings. The children's physical limitations require regular doctor's appointments and follow through with home exercise programs.

The children's feeding conditions place them at an increased risk for choking on their food if the food or drink enters their lungs instead of their esophagus. The children must be frequently reminded to take appropriate bite sizes and chew, and their liquids

2

must be thickened to precise consistencies unique to each child. Due to her aspiration, E.S. must be fed through her feeding tube to supplement eating by mouth.

The children's medical issues require constant supervision. The children see anywhere from 6 to 14 healthcare providers.

Mother herself also deals with several diagnoses. During this case, Mother was diagnosed with Weiss-Kruszka Syndrome too, as well as Bipolar I Disorder, Unspecified Communication Disorder, Unspecified Adjustment Disorder, Borderline Intellectual Functioning, and Parent-Child Relational Problem, and there were earlier diagnoses of depression, anxiety, and posttraumatic stress disorder.

Mother's overall mental age is 8 years and 11 months. Her working memory is of a child aged nine years and eight months. Mother's bipolar disorder is characterized by abnormally elevated and expansive mood, a decreased need for sleep, risky behavior, and inflated grandiosity.

In regard to the Father, his rights were not terminated at the hearing due to his absence from the hearing. Father has a history of legal issues. Father also used Mother for her money for alcohol and drugs. Father also has a history of violence against Mother.

In June 2019, the district court ordered Z.S. and E.S. removed from Mother's care. On August 19, 2019, the district court adjudicated Z.S. and E.S. as children in need of care. A year later, on August 27, 2020, K.S., who was born during the case involving Z.S. and E.S., was removed from Mother's care and adjudicated as a child in need of care on December 1, 2020. It was presumed that the Father of Z.S. and E.S. was also K.S.'s Father, even though Mother was not supposed to have contact with him. Mother was given several permanency plan tasks with the goal being to reintegrate Mother with her children.

COVID-19 forced adjustments to the permanency plan because the children had an increased risk of contracting COVID-19. KVC determined all visits had to be done virtually. To accommodate COVID-19 and Mother's diagnoses, the district court repeatedly ordered Mother to receive more time and more opportunities to prove herself as a fit parent.

Despite the no-contact order, Father continued to be involved in Mother's life. Mother's caseworker found Father hiding under the bed covers on one visit—though both Mother and Father tried to convince the caseworker Father was another man. Another unannounced visit found Father hiding behind a dresser. A caseworker saw Father outside of Mother's apartment a different time and approached, but Father dropped a bag of marijuana and ran away.

Mother's attendance at visits with the children and their medical appointments was sporadic.

On February 1, 2021, the district court determined reintegration was no longer a viable option. The district court held a termination of parental rights hearing on June 30 and July 1, 2021. The district court found Mother was unfit for four reasons emanating from K.S.A. 38-2269:

- "Emotional illness, mental illness, mental deficiency or physical disability of the parent, of such duration or nature as to render the parent unable to care for the ongoing physical, mental and emotional needs of the child." K.S.A. 38-2269(b)(1).
- "[L]ack of effort on the part of the parent to adjust the parent's circumstances, conduct or conditions to meet the needs of the child." K.S.A. 38-2269(b)(8).
- "[F]ailure to maintain regular visitation, contact or communication with the child or with the custodian of the child." K.S.A. 38-2269(c)(2).

4

- "[F]ailure to carry out a reasonable plan approved by the court directed toward the integration of the child into a parental home" K.S.A. 38-2269(c)(3).

The district court determined Mother's unfitness was unlikely to change in the foreseeable future and termination was in the best interests of the children. The district court then terminated Mother's rights to Z.S., E.S., and K.S.

Additionally, the district court ruled that Mother was presumed unfit to parent Z.S. and E.S. under K.S.A. 38-2271(a)(5) because they had been in out-of-home placement for more than a year and Mother substantially neglected or willfully failed to carry out a reasonable reintegration plan. The district court noted that Mother had the burden to rebut that presumption and that she failed to do so. Mother does not challenge that ruling on appeal.

Mother timely appeals.

ANALYSIS

Mother raises two arguments on appeal. First, she argues that the district court erred when it ruled that she was unfit and would remain unfit for the foreseeable future. Second, she argues that the district court erred when it ruled that terminating her parental rights was in the children's best interests.

*Did the district court err in finding Mother unfit and that her unfitness was unlikely to change in the foreseeable future?*

*Standard of Review*

"When the child has been adjudicated to be a child in need of care, the court may terminate parental rights or appoint a permanent custodian when the court finds by clear

5

and convincing evidence that the parent is unfit by reason of conduct or condition which renders the parent unable to care properly for a child and the conduct or condition is unlikely to change in the foreseeable future." K.S.A. 38-2269(a).

"Termination of parental rights will be upheld on appeal if, after reviewing all the evidence in the light most favorable to the prevailing party, the district judge's fact-findings are deemed highly probable, i.e., supported by clear and convincing evidence. Appellate courts do not weigh conflicting evidence, pass on the credibility of witnesses, or redetermine questions of fact. [Citation omitted.]" *In re Adoption of Baby Girl G.*, 311 Kan. 798, 806, 466 P.3d 1207 (2020), *cert. denied* 141 S. Ct. 1464 (2021).

In reviewing a district court's decision based on any clear and convincing evidence standard, an "appellate court does not weigh conflicting evidence, pass on credibility of witnesses, or redetermine questions of fact." *In re B.D.-Y.*, 286 Kan. 686, 705, 187 P.3d 594 (2008).

The district court shall base its decision on unfitness on a list of nonexclusive factors located under K.S.A. 38-2269(b). The court must also consider a separate list of nonexclusive factors when a child is not in the parent's physical custody. K.S.A. 38-2269(c). Any one of the factors in K.S.A. 38-2269(b) or (c) may, but does not necessarily, establish grounds for termination of parental rights. K.S.A. 38-2269(f).

*Discussion*

As an initial matter, throughout her brief, Mother seems to imply that this case should be viewed in two time periods—pre-Weiss-Kruszka diagnosis and post-Weiss-Kruszka diagnosis. The assertions seem to be founded on the idea that once Mother was diagnosed with Weiss-Kruszka, her case workers and social service providers should have handled the case differently. For example, in her brief Mother states that by the time she "received her correct diagnosis in spring of 2020, the world had shut down [due to

6

COVID-19] . . . and no one tried to provide accommodations to assist [M]other in parenting *with* her disability."

But Mother fails to explain why having a name for her disability affects the case when social workers knew that Mother had developmental delays and mental deficiencies as early as August 7, 2019, when her psychological and parenting evaluation was completed. Her initial evaluation noted that Mother had a low IQ, problems retaining oral information, and problems associated with her Bipolar I diagnosis such as intense manic phases which can result in decreased sleep, decreased ability to calculate risks, and feelings of grandiosity. The evaluation recommended, in part, that KVC should give Mother her instructions in writing because she could comprehend and retain that better than verbal instructions.

Attaching a Weiss-Kruszka diagnosis to Mother does not change the challenges she faced, nor is there any explanation of why social workers should have treated Mother any differently once that diagnosis was made. There does not seem to be any evidence in the record that Weiss-Kruszka is anything other than a permanent disability. Nor is there any indication that people diagnosed with Weiss-Kruszka require different accommodations than other people with similar symptoms but without that specific diagnosis.

With that in mind, the pertinent question here is whether there was sufficient evidence to support the district court's decision that Mother was an unfit parent and that she would remain unfit for the foreseeable future. When addressing that question, we are cognizant that a parent's disability "shall not constitute a basis for a determination that a child is a child in need of care, for the removal of custody of a child from the parent, or for the termination of parental rights without a specific showing that there is a causal relation between the disability and harm to the child." K.S.A. 38-2201(c)(1).

*Factors Supporting a Finding of Unfitness*

The district court ruled that Mother was unfit under four factors listed in K.S.A. 38-2269. First, the district court determined that Mother was unfit under K.S.A. 38-2269(b)(1) because of emotional illness, mental illness, mental deficiency, or physical disability that rendered her unable to care for the children's ongoing needs. Second, the court determined Mother was unfit under K.S.A. 38-2269(b)(8) because she failed to adjust her circumstances, conduct, or conditions, to meet the needs of her children. Third, the court found that Mother failed under K.S.A. 38-2269(c)(2) to maintain regular visitation, contact, or communication with her children or the children's custodian. Finally, the court also determined that Mother was unfit under K.S.A. 38-2269(c)(3) because she failed to carry out a reasonable plan approved by the court directed toward the integration of the children into the parental home.

To begin, the district court looked at Mother's parenting and psychological evaluation which indicated that Mother had a mental age of around eight years old, Bipolar I, and a communication disorder. Coupled with her children's special needs, Mother's disabilities made successfully caring for her children extremely challenging, if not impossible. As the court put it, Mother's diagnoses adversely affected her ability to parent to the extent that it resulted in "bad to catastrophic decision making, an inability to budget, and an inability to make progress on case plan tasks."

In a report submitted shortly before the termination hearing, KVC stated that Mother remained out of compliance with several of her case goals. For example, Mother was not supposed to make any large purchases without KVC approval, but she had purchased several vehicles throughout the case. In addition, Mother at times continued to work long hours, would quit her job without having another job lined up, and failed to attend appointments for her children.

Of special note is that Mother "still struggle[d] tremendously with attending" her children's medical appointments. The children's feeding therapist reported that Mother had not been attending any appointments, nor had she submitted any videos of her practicing on the baby doll KVC provided. Given the challenges that the children face while eating, attending those appointments, and learning how to safely feed the children was very important. The district court also noted that Mother's attendance and participation in appointments "actually got worse as time went on" (getting an accurate count of missed appointments from the record is difficult).

KVC also reported that Mother failed to attend required therapy. KVC also had reason to believe that Mother maintained contact with Father throughout the case, allowing him to visit her residence, when she was not supposed to do so. Mother submitted a urinalysis that was positive for benzodiazepines, morphine, and oxycodone in early June 2021. Mother stated that she had recently been in the hospital and would submit documentation to prove it but had not done so by the time the report was submitted.

In sum, the district court relied on several factors to determine that Mother was an unfit parent and would remain unfit for the foreseeable future. The children in this case have medical needs that, if not properly addressed, would place the children at risk of severe injury or worse. Mother failed to attend appointments to help her handle those medical needs, did not provide proof that she could handle the needs of her children, failed to follow her case plan goals, was dishonest with KVC and maintained contact with Father, and actually became worse on several key goals as time went on.

Mother argues that she maintained consistent virtual contact with the foster mother and had done so since the start of COVID-19. During the hearing, the foster mother testified that she and Mother met virtually "upwards of four or five times a week." The district court determined that Mother violated K.S.A. 38-2269(c)(2) because she failed to

9

maintain contact with the agency regarding drug testing, release of information, and various appointments. Nevertheless, K.S.A. 38-2269(c)(2) only requires a parent to maintain regular visitation, contact, or communication with the child or with the custodian of the child—the foster parent in this case. It seems that Mother did so. However, even if the district court erroneously granted the termination, in part, based on K.S.A. 38-2269(c)(2) that is not enough to warrant a reversal. As explained earlier, any single factor is enough to warrant termination of parental rights. K.S.A. 38-2269(f).

While Mother did make strides in some aspects of her case plan, it was too little too late. The children were out of her custody for most, if not all, of their lives. And we have held that when determining whether a parent will remain unfit for the foreseeable future, the district court needs to make that consideration using "child time" because children perceive time differently than adults. *In re E.L.*, 61 Kan. App. 2d 311, 328, 502 P.3d 1049 (2021). A month or a year for a child feels significantly longer than it does for an adult. "This difference in perception points to a prompt and permanent disposition" especially "when a child is very young and lacks any real relationship with the parent." 61 Kan. App. 2d at 328-29.

When determining whether a parent is likely to remain unfit for the foreseeable future, courts may rely on the parent's past conduct as a predictor of future behavior. See *In re Price*, 7 Kan. App. 2d 477, 483, 644 P.2d 467 (1982). And in this case, there was ample evidence to support the district court's decision that Mother would remain unfit for the foreseeable future. Mother had more than two years to make substantial progress in her case plan and, in many respects, failed to do so. While COVID-19 would have affected some of her ability to progress, it did not make it impossible. Alternative routes were offered, such as videoing practice sessions of feeding a baby doll instead of in person practice with the children, but Mother failed to make significant progress in meeting her case goals.

Finally, Mother's overarching contention that the district court based its decision solely on her disability without a link showing a causal relation between the disability and harm to the children is unpersuasive. This is not a case like those Mother cites in her brief where there was no evidence to support the district court's termination of parental rights. See *In re A.R.*, No. 121,298, 2020 WL 1969324, at *8-11 (Kan. App. 2020) (unpublished opinion) (reasoning that Father's bipolar diagnosis, alone, was not enough to terminate his parental rights but affirming termination after considering other factors leading to a determination that he was unfit); *In re J.S.*, No. 115,529, 2016 WL 6139109, at *6 (Kan. App. 2016) (unpublished opinion) (reversing termination of parental rights after finding that termination was the result of speculation). Instead, there was ample evidence to support the assertion that Mother's lack of participation in case plan goals could harm the children. The disability itself had nothing to do with terminating her parental rights. The termination was solely related to Mother's unfitness to act as a parent.

After reviewing the record on appeal, in a light most favorable to the State, there was clear and convincing evidence to support the district court's determination that Mother was an unfit parent and would remain unfit for the foreseeable future. See *In re M.H.*, 50 Kan. App. 2d 1162, 1170, 337 P.3d 711 (2014).

*Did the district court err in finding termination was in the best interests of the children?*

For her final issue on appeal, Mother argues that the district court abused its discretion when it ruled that terminating her parental rights was in the children's best interest.

*Standard of Review*

Upon making a finding of unfitness of the parent, "the court shall consider whether termination of parental rights as requested in the petition or motion is in the best

11

interests of the child." K.S.A. 38-2269(g)(1). In making such a decision, the court shall give primary consideration to the physical, mental, and emotional needs of the child. K.S.A. 38-2269(g)(1).

Appellate courts review the best interests determination for an abuse of discretion. *In re E.L.*, 61 Kan. App. 2d at 330. A judicial action constitutes an abuse of discretion if (1) it is arbitrary, fanciful, or unreasonable; (2) it is based on an error of law; or (3) it is based on an error of fact. *Biglow v. Eidenberg*, 308 Kan. 873, 893, 424 P.3d 515 (2018). The party asserting the district court abused its discretion bears the burden of showing such abuse of discretion. *Gannon v. State*, 305 Kan. 850, 868, 390 P.3d 461 (2017).

*Discussion*

Mother's best interests' argument is largely a summation of her earlier arguments, and she does little to show that the district court abused its discretion. Mother does not seem to argue that the district court's decision was based on an error of fact or was unreasonable. Instead, her only allegation is that the district court "fail[ed] to consider the effect of termination on the mental and emotional health of the children, as required by K.S.A. 38-2269(g)(1)." Mother is correct that the district court should "give primary consideration to the physical, mental and emotional health of the child" when deciding whether termination is in the children's best interests. K.S.A. 38-2269(g)(1).

Based on the district court's order, the court did just that. The district court noted that reasonable efforts were made to put Mother in a position where she could safely care for the children but that those efforts failed. To the extent that the district court's argument was brief, Mother's argument fails for two additional reasons.

First, the district court made its best interests determination at the end of its termination order and a fair reading of that order shows that the district court's fact

findings were interrelated and ultimately supported its determination that termination of Mother's parental rights were in the children's best interests. See *In re L.B.*, No. 123,869, 2021 WL 5502944, at \*22 (Kan. App. 2021) (unpublished opinion) (holding that a brief best interests' determination can be supported by a district court's discussion of the relevant facts throughout a termination order).

And second, although Mother complains that the district court's order was lacking, she did not object to the order below as inadequate. Supreme Court Rule 165 (2022 Kan. S. Ct. R. at 234) imposes on the court the duty to provide adequate findings of fact and conclusions of law on the record to explain the court's decision on contested matters. See K.S.A. 2021 Supp. 60-252. Generally, a party bears the responsibility to object to inadequate findings of fact and conclusions of law to give the district court an opportunity to correct any alleged inadequacies. *In re Guardianship and Conservatorship of B.H.*, 309 Kan. 1097, 1107-08, 442 P.3d 457 (2019). When no objection is made to a district court's findings of fact or conclusions of law on the basis of inadequacy, an appellate court can presume the district court found all facts necessary to support its judgment. *State v. Jones*, 306 Kan. 948, 959, 398 P.3d 856 (2017).

Because Mother did not object to the order as inadequate, we can presume that the district court found all facts necessary to support its judgment that termination of Mother's parental rights was in the children's best interests and that it did so while giving primary concern to the children's physical, emotional, and mental well being. See 306 Kan. at 959. Given that presumption, plus the analysis in the district court's order, and the facts involved in this case, Mother's argument, that the district court abused its discretion by ruling that terminating her parental rights was in the children's best interests, is unpersuasive.

In sum, the district court did not err when it ruled that Mother was an unfit parent, its decision was not impermissibly based on Mother's disability, and the district court's

determination that termination of Mother's parental rights was in the children's best interests was not an abuse of discretion.

Affirmed.